In re MORRISTOWN & ERIE
RAILROAD COMPANY.

Appeal of MORRISTOWN & ERIE
RAILWAY, INC., Appellant.

No. 89–5077.

United States Court of Appeals,
Third Circuit.

Argued July 17, 1989.

Decided Sept. 15, 1989.

Roger C. Ward (argued), Steven J. Halpern, Pitney, Hardin, Kipp & Szuch, Morristown, N.J., for appellant.

David J. Sheehan (argued), Crummy, Del Deo, Dolan, Griffinger & Vecchione, Newark, N.J., for appellee.

Peter N. Perretti, Jr., Atty. Gen. of New Jersey, Kenneth W. Elwell, Deputy Atty. Gen., State of N.J., Div. of Law, Environmental Protection Section, Trenton, N.J., for New Jersey Dept. of Environmental Protection.

Before STAPLETON, SCIRICA and ROSENN, Circuit Judges.

## OPINION OF THE COURT

STAPLETON, Circuit Judge:

This appeal raises an issue concerning the scope of a district court's injunctive powers under section 105(a) of the Bankruptcy Code. The trustee in bankruptcy, seeking to expedite the bankruptcy proceedings, sought an order from the district court requiring the Morristown & Erie Railway (the Railway) to supply financial assurance and apply for a permit from the New Jersey Department of Environmental Protection (DEP) that would allow the trustee to convey certain real property of the debtor's to the Railway. The district court issued a mandatory injunction to that effect. We hold that the district court had no authority to do so under section 105(a) and we will therefore reverse.

I.

The Morristown & Erie Railroad Co. (the Debtor) has been in bankruptcy proceedings since 1977. The Morristown & Erie Railway (the Railway) operated the Debtor's railroad prior to the approval in 1982 of a reorganization plan proposed by, among others, the Railway. Under the plan, the Railway agreed to purchase all of the Debtor's operating assets and all of its real property. Since approval of the plan, the Railway has operated the railroad for its own account.

In 1986, the Railway entered into a tripartite agreement with the Trustee (John

L. Ard) and the Prudential Insurance Co. Pursuant to the agreement, Prudential agreed to purchase certain of the Debtor's real property subject to the reorganization plan. The proceeds of the sale were split between the Trustee and the Railway. Under this agreement, the Railway assumed liability for the costs of bringing a parcel of the Debtor's property, known as the Rockaway site, into compliance with the New Jersey Environmental Cleanup Responsibility Act, N.J.Stat.Ann. 13:1K–6 *et seq.* (ECRA). The parties believed that the Rockaway site might present environmental problems, and under ECRA, real property containing an "industrial establishment" cannot be conveyed without DEP approval. Accordingly, the parties agreed that the Railway would withhold the $80,000 purchase price for Rockaway until conveyance was cleared by the DEP. This agreement was not reduced to writing.

DEP approval proved to be a lengthy and expensive process. First, the Trustee's environmental consultant submitted a cleanup plan, but the DEP responded that further, expensive steps would have to be taken before it would grant a permit. Railway, concerned with the costs of these measures, then hired its own expert to perform testing and to prepare a plan. The DEP gave conditional approval to this plan, but it also proposed further requirements.

Concerned that approval was far from imminent, the Trustee moved the district court to order the Railway to apply to the DEP for an expedited approval, known as an administrative consent order (ACO). Under the usual procedures, the DEP does not issue a permit until it approves a detailed cleanup plan. N.J.Admin.Code 7:26B–4.3 & 5.1. Under the ACO procedures, a detailed cleanup plan does not have to be approved by the DEP. N.J.Admin.Code 7:26B–5.1(c). An ACO may be granted in the discretion of the DEP, but only if financial assurance is supplied in an amount at least equal to the DEP's estimate of the cleanup cost. N.J.Admin.Code 7:26B–7.3. The financial assurance can be supplied by a purchaser. *Id.* When an ACO is executed, the land may be conveyed. *Id.* at 7:26B–5.1(c).

The Railway opposed the order on several grounds. First, it noted that the DEP, in determining the amount of security to be posted for an ACO, tends to set the figure very high because the actual scope of the cleanup remains unknown when the ACOs are issued. The Railway therefore asserted, and the Trustee did not disagree, that the DEP was likely to request a bond of between $500,000 and $750,000. The Railway then argued that it was financially unable to supply such assurance.

Next, the Railway stated that it feared that the ACO would cut off its rights to explore further its own cleanup proposals, and that it would instead be forced to execute the cleanup in whatever manner would be specified by the DEP. Finally, the Railway challenged the authority of the district court to force the Railway to carry out the ACO application process.

The district court grounded its authority to issue the requested order solely on section 105(a) of the Bankruptcy Code. The judge concluded that requiring Railway to apply for and post security for an ACO was warranted because "[t]he creditors cannot be denied their claims for much longer." The court noted that, even if the Railway did not apply for an ACO but instead took the more time-consuming option of submitting a clean-up plan for DEP approval, the Railway would nevertheless still have to post security to cover cleanup costs under ECRA's requirements, N.J.Admin.Code 7:26B–6.1. Without further explanation, the district judge concluded that, since "[t]he only question is whether [the Railway] must pay sooner [rather] than later," App. at 30, he did not need to consider further Railway's financial-impossibility argument.

Finally, as to the Railway's argument that it needed more time to examine other cleanup options, the court concluded that if in the future the Railway were to formulate less costly cleanup options, they could be submitted to the DEP and the DEP might reduce the amount of the bond. Accordingly, the district court ordered Railway to "initiate, with speed, the process for

obtaining an Administrative Consent Order and pay the necessary security under the N.J. Administrative Code." App. at 30. In resolving a motion for reargument against Railway, the district judge reiterated in somewhat greater detail this rationale, and described his original order as requiring Railway "to provide the requisite financial assurance to the DEP in conjunction with an ACO, if the DEP issues one." App. at 121.

## II.

On appeal, the Railway argues that it is financially incapable of furnishing the security that the DEP might require for an ACO, and that the district court lacked the authority to issue its injunction. We need only reach the latter issue, since we conclude that the district court misconstrued the nature of its powers under section 105(a).

The relevant portion of 11 U.S.C. § 105(a) provides:

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.

█ Section 105(a) authorizes the bankruptcy court, or the district court sitting in bankruptcy, to fashion such orders as are required to further the substantive provisions of the Code. Section 105(a) gives the court general equitable powers, but only insofar as those powers are applied in a manner consistent with the Code. *See* Lawrence P. King, *Collier on Bankruptcy* ¶ 105.04 at 105–15 & n. 5 (15th ed.1989). Nor does section 105(a) give the court the power to create substantive rights that would otherwise be unavailable under the Code. *See Southern Ry. Co. v. Johnson Bronze Co.*, 758 F.2d 137, 141 (3d Cir.1985) (holding that a bankruptcy court does not have the authority under § 105 to create a lien to secure payment of environmental cleanup costs when the contract obligating the debtor to pay such costs did not provide for such a lien).

█ We turn, then, to the district court's application of section 105(a) in this case.

Despite the fact that the oral agreement was never reduced to writing, the parties agree as to the nature of the Railway's undertaking pursuant to the trilateral agreement with Prudential. Most importantly, the Trustee has not argued that the agreement obligated the Railway to take the steps required of it by the district court's order. Indeed, the Trustee expressly conceded this point at oral argument. Thus it is clear that the agreement obligated the Railway to assume financial responsibility for the cleanup of the Rockaway parcel, but it did not require the Railway to take steps under New Jersey environmental laws to see that a permit allowing conveyance was obtained. Accordingly, the district judge could not rely on the contract as a source of his power to require the Railway to proceed with the ACO requirements.

That being the case, the judge's exercise of power under section 105(a) was legitimate only to the extent that some provision of the Code gives the Trustee the right to require of parties in the Railway's position that they shoulder the administrative responsibilities vis-a-vis the debtor's property that were here imposed upon the Railway. We have not been cited to, nor are we aware of, any such provision.

The issue is brought into relief by considering the court's authority had there been no agreement by the Railway to assume liability for the cleanup of the Rockaway parcel. In such a case, we do not think it could be seriously proposed that the court could force, under the authority of section 105(a) or any other provision of the Code, the Railway to assume that liability. The district court in this case, however, seemed to feel that, having gone as far as it had in assuming financial responsibility, the Railway could be required to incur further responsibilities by virtue of section 105(a). The court believed, in other words, that section 105(a) empowered it to expand the contractual obligations of the parties, if the balance of equities favored such an expansion. Such a proposition runs afoul of the principle that section 105(a) is not a substantive source of rights. Accordingly, the district court was without the authority to

order the Railway to apply and post security for the ACO.

### III.

For the foregoing reasons, we will reverse the order of the district court and the case will be remanded to the district court with an instruction that it deny the Trustee's motion.