**In re QUALITY BOTANICAL INGREDIENTS, INC.,**
**Debtor.**

**Quality Botanical Ingredients, Inc., Plaintiff,**

**v.**

**Triarco Industries, Inc. and Rodger Rohde, Defendants.**

**Bankruptcy No. 99–58000.**
**Adversary No.–99–5532**

United States Bankruptcy Court, D. New Jersey.

June 16, 2000.

Karen L. Gilman, Adam Derman, Wolff & Samson, Roseland, NJ, for defendants.

David L. Bruck, Greenbaum, Rowe, Smith, Ravin, Davis & Himmel, LLP, Iselin, NJ, for plaintiff.

### MEMORANDUM OPINION

STEPHEN A. STRIPP, Bankruptcy Judge.

The plaintiff, which is the debtor-in-possession in this chapter 11 case, filed a complaint for damages and rescission of a settlement agreement entered as a consent order in a state court action. The complaint alleges defamation, breach of contract and tortious interference with prospective economic advantage, arising out of statements made by one of the defendants, who is the principal of the other defendant, at the meeting to form the committee of unsecured creditors. The defendants filed a motion for summary judgment, which plaintiff opposes. Plaintiff filed a motion to amend the complaint to add another party as plaintiff and to assert a preference avoidance action under 11 U.S.C. § 547, which defendants oppose. This is the court's decision on the defendants' motion for summary judgment and plaintiff's motion to amend the complaint. The court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 151 and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (C), (F) and (O). This shall constitute the court's findings of fact and conclusions of law.

### FINDINGS OF FACT

Rodger Rohde ("Rohde") is president and principal of Triarco, Inc. ("Triarco," or collectively "defendants"). Triarco is a supplier of bulk ingredients in the nutrition industry, and claims that the formulations of many of its products are proprietary, confidential and not generally known or available to the public. Triarco alleged that a predecessor of the debtor, Quality Botanical Ingredients, Inc. ("QBI" or "plaintiff"), known as Island Herbs, Inc. conspired with an employee of Triarco to gain access to Triarco's trade secret information to unfairly compete with Triarco. These activities were the subject of a state court action filed by Triarco in 1993 in the Superior Court of New Jersey ("the state court action"). ¶ 9 of the amended complaint filed in that action states that defendants' "[c]ertificates of analysis and other documentation necessary in the industry for the sale of products ... were purloined by [Triarco's employee] ... and delivered to [QBI]." ¶ 11 of that amended complaint, which deals with allegations concerning certain patents belonging to Triarco, states that its employee "has sur-

reptitiously gained possession of" the patent materials "for his benefit and/or the benefit of [QBI]." Among other causes of action, the amended complaint alleged breach of contract, tortious interference with contract, unjust enrichment, fraud and conversion.

The state court action was settled with the entry of a consent order on January 15, 1998 (the "Consent Order"). The Consent Order provided that QBI was to pay to Triarco the sum of $1,200,000, under the terms of a promissory note dated December 11, 1997 ("promissory note"), a copy of which was attached to the Consent Order, which called for 60 consecutive monthly installments, beginning on November 1, 1997 and ending October 1, 2002. The Consent Order also provided security in the form of two personal guarantees, an assignment of QBI stock to be held in escrow by QBI in the event of a default under the terms of a pledge and security agreement and a second mortgage ("the mortgage") on real property rented to QBI as its place of business, but owned by an affiliate of QBI, MRA Associates, LLC ("MRA"). The parties further agreed in ¶ 3 of the Consent Order

> that no disparaging statements shall be made by any of the parties and that the terms and conditions of this settlement shall remain confidential, including information relating to QBI provided pursuant to the Promissory Note, Mortgage, Pledge and Security Agreement, and Guaranty Agreement, except as may be necessary to (a) enforce the terms and conditions of this settlement; (b) to comply with reasonable requests of third parties regarding the parties respective businesses and/or (c) as may be required by law.

In exchange, Triarco agreed to dismiss the state court action with prejudice and without costs.

The Consent Order contains no admission of guilt by QBI. QBI claims that its motive for settling the case was to end almost five years of contentious, expensive litigation and to put an end to the difficulty of remaining in business in the face of the continuing derogatory and purportedly false allegations being made by Triarco. Therefore, QBI insisted on the inclusion of ¶ 3 and would not have agreed to the settlement without it.

On July 12, 1999, QBI filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. As of the petition date, QBI apparently had paid $420,000 to Triarco under the promissory note, because Triarco filed a proof of claim for $780,000, plus costs and interest.

On August 3, 1999, an attorney for the United States' Trustee convened a meeting of the largest creditors of the debtor to form an official committee of unsecured creditors (the "committee formation meeting"). Rohde, as principal of Triarco, was present at the committee formation meeting. When Rohde was asked by the U.S. Trustee's attorney to state the basis of Triarco's claim against QBI, he replied that the basis was "theft" and "stealing". As a result, John Schortz ("Schortz"), the president of the debtor, who was also present, complained to the U.S. Trustee's attorney that Rohde's remarks evinced a malicious attitude toward the debtor and, she apparently agreed that Rohde should not have a seat on the committee. QBI further alleges that Schortz has had subsequent conversations with suppliers and other creditors who were present at the committee formation meeting "who voiced their dismay at what was said by Mr. Rohde and have advised me that the comments were unsettling. There has definitely been a reluctance of the suppliers to continue to do business with the Company [QBI] in Chapter 11." (¶ 14, Certification of Joseph R. Schortz, President of the debtor, in opposition to defendants' motion for summary judgment).

On November 3, 1999, plaintiff filed the within complaint. The defendants filed a motion for summary judgment on February 8, 2000. Plaintiff filed opposition and

on February 24, 2000, a motion to amend the complaint, to join MRA as co-plaintiff, and to set forth a claim for recovery of preferential payments.

### The Defendants' Position

Defendants argue in support of their motion for summary judgment that the statements made by Rohde were made in the course of a judicial proceeding and thus are absolutely privileged, and furthermore, they are true. Thus there is no action for defamation as a matter of law. Defendants also argue that Rohde's statements are protected by the "fair report privilege" because they represented a summary of the complaint in the state court action.[1]

With respect to the cause of action asserted for breach of the Consent Order, defendants assert that QBI itself breached the Consent Order first by failing to pay and therefore, under New Jersey law, cannot demand enforcement of the agreement against defendants. Further, the statements were made in response to a request by a third party, the U.S. Trustee's attorney, which was expressly permitted under the terms of the Consent Order. The defendants argue that there are no material facts in dispute, and the complaint is ripe for summary judgment.

Defendants have presented no arguments, oral or written, in opposition to the count of plaintiff's complaint alleging tortious interference with contractual relations and prospective economic advantage.

With respect to the plaintiff's motion to amend the complaint, defendants argue that the motion to add a non-debtor as a party plaintiff and to add a preference claim should be denied because they would not survive a motion to dismiss. The defendants contend that the court has no jurisdiction over any claim by MRA against the defendants because any such claim is a noncore, unrelated proceeding. The defendants also argue that the claims asserted by MRA are identical to those asserted by the debtor, and will fail for the same reasons set forth in defendants' motion for summary judgment. In response to the proposed preference claim the defendants argue that there is no cause of action because the payments were made in the ordinary course of the debtor's business. Thus, plaintiff's motion to amend the complaint should be denied.

### The Plaintiff's Position

The plaintiff contends that the statements made by Rohde at the committee formation meeting were defamatory and were made with the intent to injure the plaintiff, and that injury occurred. The plaintiff argues that Rohde's statements were not privileged because the committee formation meeting was not a judicial proceeding. Alternatively, the plaintiff argues that the remarks constitute a breach of the terms of ¶ 3 of the Consent Order, entitling plaintiff to rescission of the Consent Order, termination of the settlement agreements, disgorgement of monies previously paid, and compensatory and punitive damages. The plaintiff argues that there are material issues of fact with respect to these issues, and the case is therefore not ripe for summary judgment.

The Amended Complaint seeks to add MRA as a party plaintiff. No change has been proposed to the original five counts of the complaint, except to add MRA in addition to QBI in each of the demands for relief. QBI proposes to add three counts to the complaint. The sixth count alleges that by virtue of Rohde's breach of the Consent Order, MRA is entitled to a dis-

---

1. THE RESTATEMENT (SECOND) OF TORTS (1977) defines the "fair report privilege" as follows: The publication of defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern is privileged if the report is accurate and complete or a fair abridgement of the occurrence reported.
[RESTATEMENT (SECOND) OF TORTS § 611, AT 297 (1977)], quoted in *Sedore v. The Recorder Publishing Co.*, 315 N.J.Super. 137, 151, 716 A.2d 1196 (App.Div.1998).

charge of the mortgage on its property, and seeks judgment releasing same. The seventh count alleges that the granting of the mortgage by MRA was without consideration or benefit to MRA and demands judgment declaring the mortgage null and void and discharged of record. The eighth count alleges that within 90 days of the petition date, pursuant to the promissory note, QBI paid Triarco $60,000, which payment constitutes a voidable preference under 11 U.S.C. § 547. QBI argues that under the liberal rules governing amendment, leave to amend should be granted in the absence of prejudice, delay or futility, none of which are present here. MRA is an indispensable party, whose interests are implicated in the suit and who, after the complex facts involved are sorted out, must be in the case to afford complete relief to all interested parties. Further, QBI argues that payments pursuant to a settlement, whether paid under a promissory note on a regular basis or not, are never payments in the ordinary course of business of a debtor.

## CONCLUSIONS OF LAW

### 1. Summary Judgment

The party seeking summary judgment bears the burden of demonstrating that the pleadings, answers, depositions, and affidavits, if any, create no genuine issue of material fact thereby entitling that party to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed. R.Civ.P. 56(c) (incorporated by reference in Fed.R.Bankr.P. 7056). The materiality of a particular fact is determined by the substantive law governing the dispute. Only disputes over facts which are material to the outcome of the suit in accordance with governing law will preclude summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the moving party satisfies this burden, the burden then shifts to the non-moving party to provide specific facts showing a genuine issue re-

quiring a trial. *Id.* at 249, 106 S.Ct. 2505. In determining a motion for summary judgment, a court does not resolve factual disputes but must draw all reasonable inferences in favor of the nonmoving party and must accept that party's evidence when considering the merits of the motion. *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1362 n. 1 (3d Cir.1996).

### 2. The Defamation Claim

■ To state a claim for defamation under New Jersey law, a plaintiff must prove, in addition to damages: (1) that defendant made a defamatory statement of fact; (2) concerning the plaintiff; (3) that was false; (4) that was communicated to persons other than the plaintiff; and (5) fault, which may be established, where the plaintiff is a private figure and the speech is about an exclusively private concern, by a showing that the defendant communicated the false statement while acting negligently in failing to ascertain the truth or falsity of the statement before communicating it. Fault may also be established where the defendant knows the statement is false and defamatory or acts with reckless disregard of its truth or falsity. *See Feggans v. Billington*, 291 N.J.Super. 382, 391, 677 A.2d 771 (App.Div.1996). A defamatory meaning will be found only if the language "asserts or implies a statement of fact which is damaging to reputation." *Lutz v. Royal Ins. Co.*, 245 N.J.Super. 480, 492, 586 A.2d 278 (App.Div.1991). The determination of whether a statement is defamatory is a question of law determined by the court. *Kotlikoff v. The Community News*, 89 N.J. 62, 67, 444 A.2d 1086 (1982). However, as a matter of public policy, "[o]ur courts have recognized the existence of certain situations in which public interest considerations outweigh the interest in the protection of reputation and persons are allowed to communicate without fear of being sued." *Feggans v. Billington*, 291 N.J.Super. at 392, 677 A.2d 771 (citing *Fees v. Trow*, 105 N.J. 330, 336, 521 A.2d 824 (1987)). Thus, even though a

statement may be defamatory, it will not be actionable if it is subject to a qualified or absolute privilege. *Erickson v. Marsh & McLennan Co., Inc.*, 117 N.J. 539, 563, 569 A.2d 793 (1990). "A statement made in the course of judicial, administrative, or legislative proceedings is absolutely privileged and wholly immune from liability." *Id.* "Other statements, such as those made outside those forums but for the public welfare, enjoy a qualified privilege." *Dairy Stores, Inc. v. Sentinel Publishing Co., Inc.*, 104 N.J. 125, 136, 516 A.2d 220 (1986). The absolute litigation privilege applies to "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Silberg v. Anderson*, 50 Cal.3d 205, 266 Cal.Rptr. 638, 786 P.2d 365, 369 (1990), a California case followed by the New Jersey Supreme Court in *Hawkins v. Harris*, 141 N.J. 207, 214, 661 A.2d 284 (1995). *Hawkins v. Harris* "reaffirmed the wide acceptance and breadth of the privilege ...". *Peterson v. Ballard*, 292 N.J.Super. 575, 581, 679 A.2d 657 (App.Div.1996). Moreover, "[t]he litigation privilege is not limited to statements made in a courtroom during a trial: 'it extends to all statements or communications in connection with the judicial proceeding.'" *Hawkins v. Harris*, 141 N.J. at 216, 661 A.2d 284 (quoting *Ruberton v. Gabage*, 280 N.J.Super. 125, 133, 654 A.2d 1002 (App.Div.1995)).

The statements alleged by QBI to be defamatory were made in the course of a meeting convened by the U.S. Trustee to appoint the official committee of unsecured creditors in connection with QBI's bankruptcy case. It has been held that under New Jersey law, a meeting of creditors to elect a trustee in a bankruptcy case is part of a judicial proceeding, and that statements made at such a meeting are therefore privileged. *See Rogers v. Thompson*, 89 N.J.L. 639, 99 A. 389 (E. & A.1916); *see also Petty v. General Accident Fire & Life*

*Assurance Corp.*, 365 F.2d 419, 420 (3d Cir.1966) (citing *Rogers v. Thompson* for the proposition that "statements, whether by parties or their attorneys, relevant to and in the course of judicial proceedings are absolutely privileged.") The facts of the *Rogers* case are very similar to those of this case. In *Rogers*, the plaintiff was a candidate for election as a trustee, and the defendant, an attorney appearing on behalf of some of the creditors, opposed plaintiff's election, stating, "He is not a fit man. He is not straight and upright. I do not think our claim will be properly taken care of." As a result of this statement, plaintiff was not elected. He brought an action for slander against the defendant. *Rogers*, 89 N.J.L. at 639, 99 A. 389. In upholding the trial court's directed verdict for defendant, the Court of Errors and Appeals specifically held that "[t]he meeting was held as part of the proceedings of the court of bankruptcy and was clearly a legal proceeding...." *Id.* at 642, 99 A. 389.

QBI argues that the committee formation meeting was an informal meeting and not a judicial proceeding, citing *In re Kincaid*, 146 B.R. 387, 388 (Bankr.W.D.Tenn. 1992), to the effect that the section 341(a) meeting of creditors is "not a trial or an adjudicative proceeding." That case does not represent the law of New Jersey, however, and is also distinguishable on its facts. The purpose of *Kincaid* was not to determine whether the statements made at the meeting were protected from an action for defamation, but rather whether a non-lawyer representative of a corporate debtor would be permitted to question the debtor without running afoul of Tennessee law prohibiting the unauthorized practice of law. The court concluded that such questioning could take place, because a 341(a) meeting of creditors does not determine "the rights and obligations of the parties before it" and "no one at the meeting of creditors is empowered to make dispositive determinations affecting or adjusting debtor-creditor relationships." *In re Kincaid* at 390–91. There is no such requirement in New Jersey law, however,

that for the litigation privilege to be applicable, the communication must be made in the courtroom.

The committee formation meeting occurs in connection with a judicial proceeding for the purpose of the litigation privilege protecting otherwise-defamatory comments under New Jersey law. The committee formation meeting was convened by the U.S. Trustee to select the members of the official unsecured creditors committee, which "shall ordinarily consist of the persons, willing to serve, that hold the seven largest claims against the debtor ..." 11 U.S.C. § 1102(b)(1). Rohde, as the principal of Triarco, the holder of a large claim against the debtor, fit into that category, and therefore, under the California test adopted by the New Jersey Supreme Court, was clearly "a participant[ ] otherwise authorized by law" and a party to the bankruptcy proceeding. The court is satisfied that defendants are eligible to claim the privilege.

 In order for the communication itself to be privileged, it must have some relation to the course of the proceedings. *Hawkins v. Harris,* 141 N.J. at 218, 661 A.2d 284 (citing *Fenning v. S.G. Holding Corp.,* 47 N.J.Super. 110, 117, 135 A.2d 346 (App.Div.1957)). "The pertinency thus required is not a technical legal relevancy, such as would, necessarily, justify insertion of the matter in a pleading or its admission into evidence, but rather a general frame of reference and relationship to the subject matter of the action." *Id.* at 218, 661 A.2d 284 (quoting *Fenning v. S.G. Holding Corp.,* 47 N.J.Super. at 118, 135 A.2d 346). That requirement "was never intended as

a test of a participant's motives, morals, ethics or intent." *Id.* (quoting *Silberg, supra,* 266 Cal.Rptr. 638, 786 P.2d at 374). QBI argues that Rohde's response to the basis of Triarco's claim was reckless and unnecessary. Rohde could have answered the U.S. Trustee's question regarding the basis of Triarco's claim by characterizing it as "a settlement" of litigation rather than alleging "theft" and "stealing", words which do not appear in the state court complaint which Rohde claimed to have been summarizing.[2] The court is satisfied that the committee formation meeting was related to the object of the administration of the Chapter 11 case and that the statement by Rohde was related to the course of the proceedings.

The court concludes that in accordance with New Jersey law, the statements made by Rohde at the committee formation meeting are privileged and defendants are entitled to summary judgment on the first and fifth counts of plaintiff's complaint which are based on defamation. Therefore, the court need not reach the defendants' alternative arguments that the statements are not actionable because they are true (which would involve a disputed issue of material fact precluding summary judgment) or because they are protected by the "fair report privilege."

### 3. The Tortious Interference Claim

 "It is ... settled that words which are absolutely privileged against an action for defamation are also absolutely privileged against an action for tortious interference with contract or economic advantage. The rule is widely accepted."

---

2. The court notes, however, that while the complaint in the state court action does not use the same words used by Rohde in the committee formation meeting, it does use the word "purloined", which is defined in Webster's Third New International Dictionary (1986) as "to take away for oneself: appropriate wrongfully and often under circumstances that involve a breach of trust: filch ... to practice theft. **syn** see steal." Also the complaint includes a count for conversion, de-

fined in Black's Law Dictionary, Seventh Edition (1999) as "[t]he wrongful possession or disposition of another's property as if it were one's own; an act or series of acts of willful interference, without lawful justification, with any chattel in a manner inconsistent another's right, whereby that other person is deprived of the use and possession of the chattel." Certainly Rohde's words comport with a lay understanding of "conversion."

*Binkewitz v. Allstate Insurance Company,* 222 N.J.Super. 501, 516, 537 A.2d 723 (App.Div.1988). (citations omitted).

For the foregoing reason, the court will grant summary judgment in favor of defendants on the fourth count of plaintiff's complaint for tortious interference with contractual relations and prospective economic advantage.

### 4. The Breach of Contract Claim

■ The second and third counts of the complaint assert causes of action for breach of contract on the grounds that the defendants' disparaging statements at the committee formation meeting violated ¶ 3 of the Consent Order. As to these counts, defendants argue that plaintiff is not entitled to enforce the terms of ¶ 3 of the Consent Order against them because of plaintiff's prior breach of the Consent Order by defaulting on payments due on the promissory note. In the alternative, defendants assert that the statements of Rohde at the committee formation meeting did not constitute a breach because ¶ 3 expressly excepts statements made in response to certain requests of third parties. Plaintiff replies that the reference to questions of third parties only relates to the requirement of confidentiality of QBI's business information revealed to defendants for the purpose of the promissory note, the guarantees and the pledge and security agreement, and not to the strictures against making disparaging remarks.

In determining whether an issue is ripe for summary judgment, the court is required to accept the evidence presented by the non-moving party. The plaintiff denies it was in default of the Consent Order as of the petition date. Moreover, it is not self-evident that the statements made by Rohde were permitted under ¶ 3 of the Consent Order. The court therefore holds that there are genuine issues of material fact as to whether the statements made by Rohde constitute a breach of the Consent Order.

■ If it is determined that the defendants' statements breached the Consent Order, the remedies for breach will need to be determined. Plaintiff has requested rescission of the Consent Order and disgorgement of monies previously paid, among other forms of relief. Breach of a settlement agreement, however, does not constitute extraordinary circumstances under Rule 60(b)(6) justifying setting aside of a consent order because breach gives the aggrieved party the right to file a separate action on the agreement. *Apple Corps Ltd. v. International Collectors Society,* 15 F.Supp. 2d 456, 470 (D.N.J.1998).

### 4. Plaintiff's Motion to Amend the Complaint

Fed.R.Bankr.P. 7015 provides for amendment of a complaint with leave of court and further provides that "leave shall be freely given when justice so requires."

■ Grant or denial of leave to amend is in the discretion of the court. Amendment may be denied on the grounds of "undue delay, bad faith or dilatory motive on the part of the movant, ... undue prejudice to the opposing party ..., [or] futility of amendment." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). In dealing with an adversary complaint filed in November 1999 and a motion to amend filed in February, 2000, no issue of undue delay or prejudice to the opposing party arises. The only ground, therefore, on which this court could properly deny leave to amend would be if the amendment were futile.

■ "Futility" of amendment is shown when the claim or defense is not accompanied by a showing of plausibility sufficient to present a triable issue. Thus a trial court may appropriately deny a motion to amend where the amendment would not withstand a motion to dismiss. *See, Harrison Beverage Co. v. Dribeck Importers, Inc.,* 133 F.R.D. 463, 468 (D.N.J. 1990) (quoting *Massarsky v. General Mo-*

tors Corp., 706 F.2d 111, 125 (3d Cir.) cert. denied, 464 U.S. 937, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983)). The newly asserted claim must thus appear sufficiently grounded in law or fact as not to be deemed a frivolous pursuit. *Id.* at 469. Denial of leave to amend on the grounds of futility is measured under the standards of Fed.R.Civ.P. 12(b)(6) "for determination of whether the proffered amendment states a claim upon which relief may be granted." *DeWit et al. v. Firstar Corp.*, 904 F.Supp. 1476, 1504 (N.D.Iowa 1995). Thus the court must accept as true "all well-pleaded allegations in the complaint" and must draw all inferences in the plaintiff's favor. *Blaw Knox Retirement Income Plan v. White Consolidated Industries, Inc.*, 998 F.2d 1185, 1188 (3d Cir.1993), cert. denied 510 U.S. 1042, 114 S.Ct. 687, 126 L.Ed.2d 655 (1994). Leave to amend must be granted unless an "insuperable bar to relief is apparent on the fact of the complaint." *Altemose Construction Co. v. Atlantic, Cape May and Parts of Burlington, Ocean and Cumberland Counties Bldg. Trades Council*, 493 F.Supp. 1181, 1183 (D.N.J.1980).

The threshold issue raised with respect to the motion to add MRA as a party plaintiff is whether this court has jurisdiction over MRA with respect to the mortgage, which was given by MRA, a non-party to the Consent Order, on property which is not property of the bankruptcy estate. In "core" proceedings, a bankruptcy court has comprehensive power to hear and determine a matter, and enter final judgments and orders. 28 U.S.C. § 157(b)(1). In "noncore" proceedings, the bankruptcy court may only hear the dispute and submit proposed findings of fact and conclusions to the district court. 28 U.S.C. § 157(c)(1). *See Halper v. Halper*, 164 F.3d 830, 836 (3d Cir.1999) (citing *In re Marcus Hook*, 943 F.2d 261, 266 (3d Cir.1991)). Although "core" proceedings are not defined by statute, an illustrative list of matters that constitute core proceedings is provided in 28 U.S.C. §§ 157(b)(2)(A)–(O).

Non-core proceedings include all proceedings that are not core proceedings but are nevertheless related to a bankruptcy case. *See* 28 U.S.C. § 157(c)(1). "[T]he test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Pacor v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984) (emphasis omitted). "A key word in this test is 'conceivable.' Certainty, or even likelihood, is not a requirement. Bankruptcy jurisdiction will exist so long as it is possible that a proceeding may impact on the 'debtor's rights, liabilities, options, or freedom of action' or the 'handling or administration of the bankrupt estate.'" *In re Marcus Hook*, 943 F.2d at 264 (citations omitted). "Thus, the proceeding need not necessarily be against the debtor or against the debtor's property." *Pacor v. Higgins*, 743 F.2d at 994.

Applying these jurisdictional principles to this case, the court finds that adding MRA as a party plaintiff and adding its claims for relief to those of QBI would constitute the proper exercise of non-core jurisdiction of a matter "related to" QBI's bankruptcy. Although the court has not seen the mortgage or any agreement between MRA and QBI giving MRA a right of indemnification against QBI in the event the defendants attempt to foreclose the mortgage, the Third Circuit Court of Appeals noted in *Pacor* that "even in the absence of an explicit indemnification agreement, an action by a creditor against a guarantor of a debtor's obligations will necessarily affect that creditor's status vis a vis other creditors, and administration of the estate therefore depends on the outcome of that litigation." *Pacor v. Higgins*, 743 F.2d at 995.

The defendants also assert that MRA, as a non-party to the Consent Order, has no standing to assert its breach. Since MRA granted Triarco a mortgage on its property to secure QBI's obligations under the

Consent Order, any breach by Triarco which affects QBI's obligations may also affect MRA's obligations under the mortgage. Fed.R.Bankr.P. 7020 incorporates Fed.R.Civ.P. 20, "Permissive Joinder of Parties" which provides in pertinent part that "[A]ll parties may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action." The court holds that MRA is a proper party to seek relief under Fed.R.Bankr.P. 7020. The court therefore grants leave to amend to add the sixth count to the complaint.

▪ In the proposed seventh count of the complaint, it is alleged that MRA granted the mortgage to Triarco without consideration, which resulted in no benefit to MRA. Therefore MRA asks for a declaration from the court that the mortgage is null and void and discharged of record. Under New Jersey law, MRA has standing to allege lack of consideration as a defense to enforcement of the mortgage, even though it appears that MRA assented to the transaction. *See Continental Bank of Pa. v. Barclay Riding Academy,* 93 N.J. 153, 169, 459 A.2d 1163, cert. denied 464 U.S. 994, 104 S.Ct. 488, 78 L.Ed.2d 684 (1983). Therefore the court will grant leave to add the seventh count to the complaint. However, "[i]n seeking to invalidate the mortgage on consideration grounds, [mortgagor] has the burden of establishing that it failed to receive any bargained-for benefit from [mortgagee] and further, that [mortgagee] did not incur any detriment at [mortgagor's] request." *Id.* at 170, 459 A.2d 1163.

▪ With respect to the proposed eighth count, 11 U.S.C § 547(b) permits the trustee (or the debtor-in-possession per 11 U.S.C. § 1107) to recover certain transfers made prior to the petition date. *See In re First Jersey Securities, Inc.,* 180 F.3d 504, 509 (3d Cir.1999). In order to establish a claim for a preference, the debtor must establish that the transfer was:

1. To or for the benefit of a creditor;

2. For or on account of an antecedent debt owed by the debtor before the transfer was made;

3. Made while the debtor was insolvent;

4. Made on or within 90 days prior to the petition date if the creditor was not an insider; and

5. That enables the creditor to receive more than it would have received if the case were in chapter 7, the transfer had not been made and the creditor received payment to the extent permitted by the Code.

11 U.S.C. § 547(b).

In its proposed amendment to the complaint, the plaintiff alleges that it transferred $60,000 to the defendants in the 90 days prior to the filing of the petition, and that all of the elements of a preference are present. Accepting, as the court must on a motion to amend, all of the allegations of the proposed amended complaint, the plaintiff has made out a prima facie case for an avoidable preference. However, a preference may not be avoided to the extent that the transfer was:

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms.

▪ In order to prevail with this defense, a transferee must satisfy each of the three elements of this defense by a preponderance of the evidence. *See In re First Jersey Securities, Inc.,* 180 F.3d at 512 (citing 11 U.S.C. § 547(g) and *J.P. Fyfe, Inc. of Florida, Inc. v. Bradco Supply Corp.,* 891 F.2d 66, 69–70 (3d Cir. 1989)). There is a substantial body of case law that holds that payments made pursuant to settlement of litigation are never in the ordinary course of business between a

debtor and a creditor for purposes of Code section 547(c)(2). *See, e.g. Hickey v. Nightingale Roofing, Inc.,* 83 B.R. 180, 185 (D.Mass.1988); *Richardson v. Philadelphia Housing Authority (In re Richardson),* 94 B.R. 56, 60 (Bankr.E.D.Pa.1988). The court therefore cannot determine summarily that the proposed preference count fails to state a cause of action. The court will permit the plaintiff to amend the complaint to add the count alleging an avoidable preference pursuant to 11 U.S.C. § 547.

## CONCLUSION

In summary, the defendants' motion for summary judgment is granted as to the first, fourth and fifth counts of the complaint and denied as to the second and third counts to the extent that they set forth a claim for breach of the Consent Order. The plaintiff's motion to amend the complaint is granted. The plaintiff is to submit an order within ten days. The plaintiff is also to set up a telephone conference thereafter to schedule further proceedings.