**In re VISION METALS, INC., et al., Debtors.**

**Vision Metals, Inc., Plaintiff,**

v.

**SMS Demag, Inc., Defendant.**

**Bankruptcy No. 00–4205(MFW). Adversary No. 02–6528.**

United States Bankruptcy Court, D. Delaware.

July 14, 2004.

694

Ashley B. Stitzer, Christopher A. Ward, Steven M. Yoder, The Bayard Firm, Wilmington, DE, Elio Battista, Jr., Michael

David Debaecke, Blank Rome, LLP, Wilmington, DE, Mark E. Chesen, Berwind Financial, LP, Philadelphia, PA, for Debtors.

Tobey M. Daluz, Ballard, Spahr, Andrews & Ingersoll, LLP, Wilmington, DE, for Swan Transportation Co.

David L. Buchbinder, Office of U.S. Trustee, Wilmington, DE, U.S. Trustee.

Michael David Debaecke, Blank Rome, LLP, Wilmington, DE, for Official Committee of Unsecured Creditors and Blank, Rome, Comisky & McCauley.

## OPINION [1]

MARY F. WALRATH, Chief Judge.

Before the Court is the Motion for Leave to File an Amended Complaint filed by Vision Metals, Inc. ("the Debtor") and the Motion for Judgment on the Pleadings filed by SMS Demag, Inc. ("Demag") seeking to dismiss Counts V and VI of that complaint. For the reasons set forth below, the Debtor's Motion will be denied and Demag's Motion will be granted.

## I. BACKGROUND

The Debtor was involved in the business of manufacturing pipes and other metal products. Demag was engaged in the business of designing, selling, maintaining, and supervising the installation of equipment in mills for producing pipes, tubes, and related metal products. On December 12, 1997, the Debtor and Demag entered into an agreement ("the Supply Agreement"), in which Demag agreed to supply the Debtor with equipment for an assel and stretch reducing mill project ("the Assel Mill").

Difficulties arose in the performance of the Supply Agreement. In a settlement agreement dated August 17, 2000 ("the First Settlement Agreement"), the Debtor and Demag agreed that a payment due from the Debtor would be waived and Demag would provide further assistance to the Debtor with the Assel Mill. The First Settlement Agreement also contained a release of all other claims and obligations between the parties.

On November 13, 2000, the Debtor and its affiliates filed voluntary petitions under chapter 11 of the Bankruptcy Code. On January 17, 2001, the Debtor filed a Motion seeking authority to assume the Supply Agreement and the First Settlement Agreement under section 365 of the Bankruptcy Code. In an Order dated January 31, 2001 ("the Assumption Order"), the Court granted the Debtor's Motion.

On March 7, 2001, the parties entered into a second settlement agreement ("the Second Settlement Agreement"), which also contained a release of claims and obligations between the parties. The Second Settlement Agreement was never approved by the Court. The Assel Mill was shut down in September 2002.

On November 11, 2002, the Debtor filed a Complaint against Demag seeking to avoid and recover alleged fraudulent conveyances, preferential transfers, and postpetition transfers.

Two days later, on November 13, 2002, the Debtor commenced an action against Demag in Texas state court, asserting that Demag had breached the Supply Agreement. It also sought a declaratory judgment that the First and Second Settlement Agreements did not provide a defense to its action for breach of the Supply Agreement. That action was removed to the United States District Court for the Southern District of Texas. Demag filed a Mo-

---

1. This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

tion to dismiss that suit based on an arbitration provision contained in the Supply Agreement. On August 27, 2003, the District Court granted Demag's Motion to dismiss. The Debtor's Motion to reconsider that order was denied on October 29, 2003.

On December 18, 2003, Demag filed a Motion for Judgment on the Pleadings as to Counts V and VI of the Complaint filed in this Court. In Count V, the Debtor seeks to vacate the Assumption Order. In Count VI, the Debtor seeks a declaratory judgment that Demag should be equitably estopped from arguing that the Assumption Order bars the Debtor from asserting claims for breach of the Supply Agreement. On January 16, 2004, the Debtor filed a Motion for leave to amend its Complaint. The parties have fully briefed the Motions and they are ripe for decision.

## II. *JURISDICTION*

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 & 157(b)(2)(A), (F), (H), & (O).

## III. *DISCUSSION*

### A. *Motion for Judgment on the Pleadings*

#### 1. *Standard*

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, as incorporated by section 7012(b) of the Federal Rules of Bankruptcy Procedure, "judgment on the pleadings is 'appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts.'" *In re Mobile Tool Intern., Inc.*, 306 B.R. 778, 779–80 (Bankr.D.Del.

2004) (quoting *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1371 (11th Cir. 1998)). The moving party must establish that there is no material issue of fact and it is entitled to judgment as a matter of law. *Id.*

Demag asserts that it is entitled to judgment on the pleadings on Counts V and VI of the Complaint. These Counts seek to vacate the Assumption Order and to preclude Demag from arguing that the First Settlement Agreement is a release that bars the Debtor from asserting Demag has breached the Supply Agreement. In response, the Debtor asserts that there are valid legal bases to support those Counts of the Complaint, namely Rule 60(b) of the Federal Rules of Civil Procedure, section 105 of the Bankruptcy Code, and the doctrine of equitable estoppel.[2]

#### 2. *Rule 60(b)*

Rule 60(b) provides in pertinent part:

On motion and upon such terms as are just, the court may relieve a party ... from a final judgment, order, or proceeding for the following reasons: ... (5) ... it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Fed.R.Civ.P. 60(b).

Vacating or modifying orders is "particularly appropriate where factual circumstances have changed." *In re Lebanon Steel Foundry*, 48 B.R. 520, 523 (Bankr.M.D.Pa.1985). "The basic policy tension in determining whether a final judgment should be set aside revolves around whether the factual or legal cir-

**2.** In its response to Demag's motion, the Debtor relies on factual allegations set forth in the Amended Complaint, even though its Motion for leave to amend the Complaint has not been granted. Nonetheless, for purposes of this discussion, we will consider the new factual allegations of the Amended Complaint.

cumstances have changed to such an extent that the Court's interest in deciding the case on the merits outweighs its interests in orderly procedures and the finality of judgments." *In re Durkalec,* 21 B.R. 618, 620 (Bankr.E.D.Pa.1982). "The Debtor has the burden to make a clear and convincing showing and demonstration that its motion falls within the context of Rule 60." *Keith County Bank & Trust Co. v. Cannady Supply Co., Inc. (In re Cannady Supply Co., Inc.),* 6 B.R. 674, 677 (Bankr.D.Kan.1980).

■ Relief is appropriate under Rule 60(b) only upon a showing of exceptional circumstances and where, absent such relief, an extreme and unexpected hardship will result. *Mayberry v. Maroney,* 558 F.2d 1159, 1163 (3d Cir.1977) (citations omitted). However, the Bankruptcy Court may exercise more liberally its power to vacate orders granted under Rule 60(b)(6) if it is necessary to "accomplish justice" or to deal with "unforeseen contingencies." *Durkalec,* 21 B.R. at 620.

■ The Debtor urges the Court to apply a liberal standard when determining whether to vacate an order or decree pursuant to Rule 60(b). Demag, on the other hand, argues that the application of a more liberal standard is not warranted here because the Debtor is liquidating its assets. Demag further argues that the Debtor is improperly asking the Court to undo an arms length settlement agreement.

We agree with Demag that the application of a more liberal standard is not warranted in this case because the Debtor is liquidating. Courts applying a liberal standard usually do so where the debtor seeks to reorganize and continue its operations. *See, e.g., C.I.T. Corp. v. Johnson & Morgan Contractors (In re Johnson & Morgan Contractors),* 29 B.R. 372 (Bankr. M.D.Pa.1983) (applying a liberal standard where equipment is necessary for effective

reorganization). Consequently, we conclude that, to obtain relief under Rule 60(b) the Debtor needs to demonstrate exceptional circumstances.

■ Demag argues that the Debtor has failed to establish the exceptional circumstances necessary for relief under Rule 60(b). When the Debtor executed the First Settlement Agreement, it acknowledged that Demag had satisfied all its obligations under the Supply Agreement. In addition, under the First Settlement Agreements, the Debtor waived certain claims, including any claims related to Demag's performance guarantees under the Supply Agreement. Demag asserts there is no basis to overturn the First Settlement Agreement or the release contained therein.

The Debtor argues that persistent misrepresentations, undue influence, duress and changed circumstances require that the Assumption Order be vacated. Because it relied on Demag's continued misrepresentations that it could make the Assel Mill perform, the Debtor asserts it was forced to assume the Supply Agreement and the First Settlement Agreement to avoid being stuck with a $16.5 million inoperable facility. As a result of Demag's failures to meet its obligations under the various Agreements, the Debtor asserts it was forced to liquidate.

In support of its position, the Debtor cites cases that are clearly distinguishable. In *Johnson & Morgan,* the Court granted the debtor's request for relief from a stipulated order enforcing a creditor's remedies. The Court held that relief was warranted because of unforeseeable consequences (weather, foreign competition, and deflationary oil prices) and the necessity of the equipment for the debtor's reorganization. *Johnson & Morgan,* 29 B.R. at 374–75. In *Lebanon Steel,* the

Court vacated a liquidation order to allow the debtor to resume operations, seek financial assistance, and attempt to reorganize after two major labor and union issues had been resolved and the secured lenders' position had improved. *Lebanon Steel,* 48 B.R. at 524–25.

Unlike the above cases, there are no changed or unforeseeable circumstances present in this case that require that the Assumption Order be vacated. Paragraph I of the Supply Agreement states that " 'Final Acceptance' shall mean the date [Demag] demonstrated by way of performance testing that all Work, excluding Punch list items, has been completed and has met the performance guarantees."

Under the First Settlement Agreement, which is titled "Certificate of Final Acceptance," "[t]he parties mutually agree[d] that the Final Acceptance in Section I of the [Supply Agreement] has taken place today." Thus, the Debtor expressly agreed that Demag had met the performance guarantees.

The Debtor had numerous opportunities prior to the First Settlement Agreement to question Demag's ability to satisfy its obligations under the Supply Agreement. If Demag had failed to meet its obligations under the Supply Agreement, then the Debtor could have pressed the issue in court and not settled with Demag. Instead, the Debtor assumed the Supply Agreement and First Settlement Agreement and waived any right to argue that Demag had not completed its obligations under the Supply Agreement.

In fact, the Debtor argued, and the Court found, that the assumption of the Supply Agreement and the First Settlement Agreement was in the best interest of the Debtor. The Debtor cannot now, in hindsight, argue that the Assumption Order was not in the estate's best interest. *See, e.g., In re Davis,* 150 B.R. 633, 640

(Bankr.W.D.Pa.1993) (denying relief from judgment pursuant to Rule 60(b)(6) where "hindsight seem[ed] to indicate to him that his decision not to appeal was probably wrong"); *In re Cannady Supply Co., Inc.,* 6 B.R. at 678 (denying relief where debtor failed to show any unforeseeable events or change in circumstances).

We conclude that the Debtor has failed to articulate exceptional circumstances. Consequently, we find there is no basis to vacate the Assumption Order under Rule 60(b).

### 3. *Section 105*

 The Debtor argues, nonetheless, that the Court may exercise its equitable powers pursuant to section 105 to vacate the Assumption Order. However, the Court can use section 105 only in a manner "consistent with the Code." *In re Morristown & Erie R.R. Co.,* 885 F.2d 98, 100 (3d Cir.1989). The Court may not create "substantive rights that would otherwise be unavailable under the Code." *Id. See also U.S. v. Pepperman,* 976 F.2d 123, 131 (3d Cir.1992).

 Demag argues that the Debtor seeks to utilize section 105 in a manner inconsistent with the Code. Under section 365(g)(2)(A), if the Debtor breached or sought to reject the First Settlement Agreement and Supply Agreement now, then Demag would have an administrative expense claim against the Debtor. *In re Pearson,* 90 B.R. 638, 642 (Bankr.D.N.J. 1988). A "post-petition breach or rejection after a prior assumption is afforded priority as an administrative expense claim" pursuant to section 365(g)(2)(A). *Id.* (citations omitted).

The Debtor seeks to avoid this result by having us vacate the Assumption Order under section 105. The Debtor argues that if the Assumption Order is vacated, then the parties will be restored to the

position they were before the Assumption Motion was granted. *See, e.g., World Sav. & Loan Ass'n v. Foronda*, No. 96C3627, 1998 WL 483515, at *1 (N.D.Ill. Aug.10, 1998) ("[T]he general rule is that where a court, in the discharge of its judicial functions, vacates an order previously entered, the legal status is the same as if the order had never existed."); *In re Allen*, 69 B.R. 867, 872 (Bankr.E.D.Pa.1987) ("[W]e are inclined to treat the vacated dismissal order as if it were totally null and void and never existed."). The Debtor argues it would then be permitted to reject the Agreements without creating an administrative expense in favor of Demag.

We agree with Demag that the Debtor cannot utilize section 105 to create a result directly contrary to the express provisions of the Code. If, as the Debtor suggests, section 105 could be used to avoid an assumption order, then section 365(g)(2)(A) would be eviscerated. This is not permitted. *Pepperman*, 976 F.2d at 131; *Morristown & Erie R.R.*, 885 F.2d at 100. Consequently, we conclude that the exercise of our equitable powers under section 105 is unwarranted.

### 4. *Equitable Estoppel*

■ The Debtor also argues that Demag induced the Debtor to assume the Settlement Agreement by false representations and undue influence. As a result, the Debtor argues that Demag should be equitably estopped from relying on the Settlement Agreement to defend claims against it.

■ "Equitable estoppel is grounded on notions of fair dealing and good conscience and is designed to aid the law in the administration of justice where injustice would otherwise result." *Eastern Air Lines, Inc. v. Ins. Co. of State of Pa. (In re Ionosphere Clubs, Inc.)*, 85 F.3d 992, 999 (2d Cir.1996). To establish a theory of equitable estoppel, the moving party must establish (1) material misrepresentation; (2) reasonable detrimental reliance; and (3) extraordinary circumstances. *Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226, 236 (3d Cir.1994) (citations omitted).

■ The Debtor argues that Demag misrepresented that the Assel Mill was capable of producing "boiler quality tubing" and relies on paragraph 8 of the First Settlement Agreement. We agree with Demag that paragraph 8 merely discusses one of thirty sizes set forth in the Supply Agreement.[3] It does not discuss the quality of the tubing. Consequently, we find that, even if this was misrepresented by Demag, it is not a material misrepresentation.

Further, for the reasons stated in Part 2 above, exceptional circumstances have not been stated. In negotiating the First Settlement Agreement, the Debtor had ample opportunities to determine if Demag was in breach of the Supply Agreement. It may not now raise issues it waived in the First Settlement Agreement. *See, e.g., In re Ionosphere*, 85 F.3d at 999–1000 (affirming ruling that estopped trustee from opposing enforcement of insurance premiums where debtor had assumed contract after extensive negotiations and failed to raise the issue of premiums at the assumption

---

**3.** Paragraph 8 of the First Settlement Agreement states:

[Debtor has] requested [Demag] to show that the [Assel Mill] is able to process the small diameter/light wall tube with the dimension 0.840″ × 0.109″ (Outer Diameter × Wall Thickness). [Debtor] shall allow the production of this tube size within September 2000. [Demag is] obliged to give the corresponding technical support to [Debtor]. Eventually required technical modifications to the [Assel Mill] shall be initiated by [Demag] free of charge for [Debtor].

hearing); *Lewis Indus. v. Barham Constr. Inc.*, 878 F.2d 1230, 1231 (9th Cir.1989) (affirming ruling that estopped debtor from arguing breach of contract after it failed to raise the issue at the assumption hearing). Consequently, there is no basis for equitable estoppel against Demag.

### B. *Motion to Amend Complaint*

The Debtor seeks leave to amend the Complaint, and has attached a copy of the proposed Amended Complaint. The Amended Complaint contains new factual allegations that Demag falsely represented that the Assel Mill had the ability to produce "boiler quality tubing." Demag argues that the Motion should be denied because the amendment of the Complaint is futile and would unduly delay this case.

Rule 15(a) of the Federal Rules of Civil Procedure, made applicable under Federal Rule of Bankruptcy Procedure 7015, provides that a party may amend its pleading "by leave of court" which "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). *See also Foman v. Davis*, 371 U.S. 178, 182–83, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). However, leave to amend the complaint will be denied if the amendment is futile, would cause undue prejudice, or the plaintiff was unduly delayed in seeking relief. *See, e.g., Hechinger Liquidation Trust v. Cooper Bussmann, Inc. (In re Hechinger Inv. Co. of Del., Inc.)*, 297 B.R. 390 (Bankr.D.Del. 2003). "Grant or denial of leave to amend is in the discretion of the court." *Quality Botanical Ingredients, Inc. v. Triarco Indus., Inc. (In re Quality Botanical Ingredients, Inc.)*, 249 B.R. 619, 629 (Bankr. D.N.J.2000).

"'Futility' of amendment is shown when the claim or defense is not accompanied by a showing of plausibility sufficient to present a triable issue." *Id.* (citations omitted). "Amendment is futile if it would not cure a deficiency in the

original complaint or if the complaint as amended would not withstand a renewed motion to dismiss." *In re Ambulatory Med. & Surgical Health Care, Inc.*, 187 B.R. 888, 900 (Bankr.W.D.Pa.1995). For the reasons stated in the discussion above, the allegations of the Amended Complaint were considered and found insufficient to withstand Demag's Motion for judgment on the pleadings. That is, even if the new factual averments were taken as true, Demag would still be entitled to judgment on the pleadings.

Further, the Debtor concedes that it does not assert new claims in the Amended Complaint. It argues that the new factual allegations were included to place the parties' dealings in context. *See, e.g., Sandcrest Outpatient Services, P.A. v. Cumberland County Hosp. Sys., Inc.*, 853 F.2d 1139, 1148–49 (4th Cir.1988) (upholding the denial of a motion to amend because proposed amendment did not add newly discovered facts or plead different cause of action). Consequently, the motion to amend will be denied as futile.

Demag further argues that the Debtor's Motion to Amend the Complaint constitutes undue delay because it was filed nearly fourteen months after the Complaint and three and a half years after the First Settlement Agreement.

"Delay, by itself, is not a sufficient reason for a court to deny a motion to amend a complaint." *In re Laramie Assoc., Ltd.*, No. 95–19102, 1997 WL 67848, at *6 (Bankr.E.D.Pa. Feb. 12, 1997) (citations omitted). "Rather the key factor is whether the nonmoving party will be prejudiced if the amendment to the pleading is allowed." *Id.* "[T]he court may deny amendment where there has been inordinate delay, the movant offers no satisfactory explanation, and the amendment would prejudice the defendant." *In re Kellogg*, 166 B.R. 504, 510 (Bankr.D.Conn.1994) (citing *Cresswell v. Sullivan & Cromwell,*

922 F.2d 60, 72 (2d Cir.1990) and *Rose Hall Ltd. v. Chase Manhattan Overseas Banking Corp.,* 576 F.Supp. 107, 173–174 (D.Del.1983), *aff'd,* 740 F.2d 956 (3d Cir. 1984), *cert. denied,* 469 U.S. 1159, 105 S.Ct. 909, 83 L.Ed.2d 923 (1985)).

The Motion to amend the complaint was filed fourteen months after the original complaint. The Debtor does not offer an explanation for this delay. In addition, the Amended Complaint does not contain any newly discovered facts. Rather, the Debtor cites to facts relative to the First Settlement Agreement, which was executed three and a half years prior to its motion to amend. *See, e.g., Sandcrest Outpatient Serv. P.A. v. Cumberland County Hosp. Sys., Inc.,* 853 F.2d 1139, 1148–49 (4th Cir.1988) (denying motion to amend where motion was filed more than eight months after the filing of the complaint and new complaint did not add more particularized or newly discovered facts); *Williams v. Little Rock Mun. Water Works,* 21 F.3d 218, 224–25 (8th Cir.1994) (denying motion to amend where motion to amend was filed fourteen months after filing original complaint and plaintiff failed to offer explanation for undue delay); *Kellogg,* 166 B.R. at 510 (Bankr.D.Conn.1994) (denying motion to amend where, inter alia, plaintiff knew defendant's position more than thirteen months prior to motion to amend); *Cianchette v. Bank of New England (In re BWL, Inc.),* 123 B.R. 675, 683 (D.Me.1991) (affirming denial of motion to amend answer thirteen months after original answer was filed); *Oy Tilgmann AB v. Sport Publ'g Int'l Inc.,* 110 F.R.D. 68 (E.D.Pa.1986) (denying amendment to counterclaim filed fourteen months after the case was commenced and subsequent discovery closed); *Quality Botanical,* 249 B.R. at 619 (finding no undue delay where motion to amend was filed three months after filing of adversary complaint). We agree that the delay in this case is unwarranted. Consequently, the amendment will also be denied on the basis of undue delay.

## IV. CONCLUSION

For the reasons set forth above, we deny the Debtor's Motion for Leave to File an Amended Complaint and grant Demag's Motion for Judgment on the Pleadings.

An appropriate Order is attached.

### ORDER

AND NOW, this 14th day of July, 2004, upon consideration of the Motion for Judgment on the Pleadings filed by SMS Demag, Inc. ("Demag") and the Motion for Leave to File an Amended Complaint filed by Vision Metals, Inc. ("the Debtor"), it is hereby

**ORDERED** that the Debtor's Motion will be **DENIED,** and it is further

**ORDERED** that Demag's Motion will be **GRANTED.**