**In re e2 COMMUNICATIONS, INC., Debtor.**

**e2 Creditors' Trust and e2 Litigation Trust by and through their trustee, Steven C. Metzger, Plaintiffs,**

**v.**

**Jeffrey L. Farris, Defendant.**

**Bankruptcy No. 02–30574–BJH–11. Adversary No. 04–3087–BJH.**

United States Bankruptcy Court, N.D. Texas, Dallas Division.

Dec. 2, 2004.

---

Michael J. Adams, Francis B. Majorie, The Majorie Firm, Dallas, TX, for Plaintiffs.

Elliot D. Schuler, Baker and McKenzie, Dallas, TX, for Defendant.

**Memorandum Decision and Order Denying Summary Judgment**

BARBARA J. HOUSER, Bankruptcy Judge.

Before the Court is the motion for summary judgment (the "Motion") filed by Jeffrey L. Farris ("Farris" or "Defendant") in this adversary proceeding. The Court has jurisdiction over the Motion in accordance with 28 U.S.C. §§ 1334 and 157(b).

For the reasons set forth below, and after a careful review of the summary judgment evidence, the Court concludes that the Defendant has not established that there is an absence of evidence to support the claims asserted by Steven C. Metzger ("Trustee"), acting on behalf of the e2 Creditors Trust and the e2 Litigation Trust (collectively, the "Plaintiffs"). Accordingly, the Motion must be denied.

**Factual Background** [1]

Farris was a founder, president, and director of the Debtor. With 5.64 million shares, Farris was the Debtor's largest shareholder. Farris also owned an S–Corporation known as Edisys, which provided consulting services to the Debtor under a written consulting agreement (the "Consulting Agreement"). Under the Consulting Agreement, Edisys was to receive at least $15,000 a month for its services.

The Debtor began experiencing cash flow difficulties. Beginning around March 2001, Farris made several transfers to the Debtor. While the proper characterization of these transfers is in dispute (as debt or equity), it is not disputed that over the next few months, Farris's transfers to the Debtor totaled $620,000. Five promissory notes evidencing these transfers were ultimately issued (the "Five Notes"), and a security agreement and UCC–1 filing doc-

---

1. The facts recited here are not in dispute.

uments were executed and filed (the "Farris Security Agreement" and the "Farris UCC–1," respectively).[2] In October 2001, Farris received an assignment of Edisys's $200,000 claim for unpaid fees allegedly due under the Consulting Agreement.

On October 8, 2001, Farris and the Debtor entered into a Contribution and Release Agreement ("CRA"). The CRA was signed by Farris (on behalf of himself) and by Bennie Bray, another director of the Debtor (on behalf of the Debtor). The CRA provided for the consolidation of the Five Notes and Edisys's assigned claim into one unsecured replacement note in the principal amount of $821,804.00 (the "Unsecured Replacement Note"). Under the CRA, Farris also conveyed his stock back to the Debtor as a contribution to capital, and the parties exchanged mutual limited releases.

The Debtor apparently attempted a merger with e-Synergies in October 2001, around the time that Farris ceased his involvement with the Debtor. While it is unclear from the summary judgment record whether the merger was successful, it is clear that an involuntary petition was filed against the Debtor on January 25, 2002. The Debtor consented to the entry of an order for relief on February 14, 2002. Thereafter, Farris filed, and then amended, a Proof of Claim in the bankruptcy case for at least $857,982.04—the bulk of which consists of the amounts allegedly due under the Unsecured Replacement Note (the "Proof of Claim").[3]

## Legal Analysis

### Summary Judgment Standard

Summary judgment is proper if the summary judgment record shows that there is "no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(b); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Abbott v. Equity Group, Inc.,* 2 F.3d 613, 619 (5th Cir.1993). The summary judgment movant:

> need not support the motion with evidence negating the opponent's case; rather, once the movant establishes that there is an absence of evidence to support the non-movant's case, the burden is on the non-movant to make a showing sufficient to establish an issue of fact for each element as to which that party will have the burden of proof at trial.

*Epps v. NCNB Texas Nat'l Bank,* 838 F.Supp. 296, 299 (N.D.Tex.1993), *aff'd* 7 F.3d 44 (5th Cir.1993) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). To defeat a summary judgment motion, the nonmovant must "adduce evidence which creates a material fact issue concerning each of the essential elements of its case for which it will bear the burden of proof at trial." *Abbott,* 2 F.3d at 619. The non-moving party must " 'do more than simply show some metaphysical doubt as to the material facts.' " *Epps,* 838 F.Supp. at 299 (quoting *Matsushita Elec. Indus. Co. v. Zenith*

---

**2.** At oral argument, counsel for the Defendant conceded that many of these documents were backdated. *See Transcript of Proceedings* at pp. 48–49 (Oct. 5, 2004).

**3.** Farris filed the Proof of Claim on March 21, 2002. According to the Proof of Claim, Farris is owed $821,804.00 under the Unsecured Replacement Note and $36,178.03 in unpaid

business expenses. Farris subsequently amended the Proof of Claim on June 28, 2002 to include additional documentation of his claim, as well as to add a claim for unspecified damages under an indemnification agreement allegedly entered into between Farris and the Debtor.

*Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). " '[O]n summary judgment the inferences to be drawn from the underlying facts contained in (the moving party's) materials must be viewed in the light most favorable to the party opposing the motion.' " *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)).

### The Trustee's Claims

In the Complaint, the Trustee has pled seven counts against Farris. Since many counts are interrelated, this Memorandum Decision is organized into three sections: (1) an analysis of Counts 2 through 4, concerning various preference and fraudulent transfer claims, and to which the Defendant has either raised the defense of release or argued that the transfers are not avoidable; (2) an analysis of Count 1, concerning the validity of the Proof of Claim (which is largely contingent on the avoidability analysis of the first section); and (3) an analysis of Counts 5 through 7, concerning claims arising from allegations of fiduciary breaches by Farris.

### Counts 2–4: Preference and Fraudulent Transfer Claims

The Trustee has asserted three preference and fraudulent transfer claims. In Count 2, the Trustee asserts that the CRA is a preferential transfer avoidable under § 547 of the Bankruptcy Code.[4] In Count 3, the Trustee asserts that the Farris Security Agreement and the Farris UCC–1 are avoidable under § 544. The Trustee also asserts that the transactions involving transfers by Farris to the Debtor, which subsequently resulted in the Five Notes, the Farris Security Agreement, and the Farris UCC–1 (collectively, the "Underlying Transactions"), should be recharacterized as contributions to equity capital. In Count 4, the Trustee asserts that the Underlying Transactions and the CRA are fraudulent transfers avoidable under the Bankruptcy Code and/or applicable nonbankruptcy law.

To each of these claims, the Defendant has raised one of two arguments: (1) that the CRA is valid and not subject to avoidance; and (2) that § 11(a) of the CRA provides for a complete release of the Trustee's claims concerning the Underlying Transactions.[5] The key to this argument is the Defendant's contention that the release provided in § 11(a) of the CRA is itself not a transfer—*i.e.*, the Defendant argues that a release of claims is not a transfer of property for purposes of applicable preference and fraudulent transfer law. In response, the Trustee essentially asserts that the release contained in the CRA could itself be an avoidable transfer.[6]

**4.** Statutory references in this Memorandum Decision are to the Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, unless specifically noted otherwise.

**5.** During oral argument, Defendant's counsel essentially conceded that if the Court finds that § 11(a) of the CRA is a transfer of property (that is subject to potential avoidance and is therefore incapable of providing a defense at this time), then genuine issues of material fact exist concerning the avoidability of the CRA and the Underlying Transactions. *See* Transcript of Proceedings at p. 69 (Oct. 5, 2004) (reflecting that Defendant's counsel an-

swered "Correct" to the Court's question that "the key to you winning this motion for summary judgment is that the CRA isn't a transfer for either fraudulent transfer purposes or preference purposes?"); *see also id.* at p. 117 (showing that Defendant's counsel did not object to the Court's statement that "you agree that if you don't win on that issue, we have a myriad of fact questions and therefore summary judgment would not be appropriate").

**6.** The Trustee reads the scope of the release more narrowly than the Defendant. But, the Trustee states that if the release is read as

Sections 10 and 11 of the CRA provide for certain mutual releases of liability. The Defendant uses these releases, particularly those contained in § 11(a) of the CRA, to defend against the Trustee's Count 2, 3, and 4 claims. Section 11 provides:

(a) In partial consideration of the undertakings, mutual promises, and agreements contained herein, the Company for itself and its past, present, and future representatives, administrators, directors, officers, shareholders, employees, agents, consultants, principals, attorneys, partners, joint venturers, affiliates, present subsidiaries, successors, assigns, and each of them releases its claim against Farris and his heirs and representatives (i) for the execution and delivery of the Security Agreement between the Company and Farris dated March 2, 2001, but nothing more; (ii) for the filing of a UCC–1 with the Secretary of the State of Texas pursuant to such Security Agreement, but nothing more; and (iii) with respect to certain indebtedness in respect to the foregoing, as evidenced by those certain promissory notes in the aggregate principal amount of $620,000 which indebtedness is being consolidated with other indebtedness of the Company into a Replacement Promissory Note of even date herewith in the principal amount of $821,804, but nothing more except as set forth in Section 6(a)(i), (ii), and (iii).

(b) In further consideration of the undertakings, mutual promises, and agreements contained herein, the Company for itself and its past, present, and future representatives, administrators, directors, officers, shareholders, employees, agents, consultants, principals, attorneys, partners, joint venturers, affiliates, present subsidiaries, successors, assigns, and each of them hereby fully and irrevocably release, acquit and discharge Farris and each of his past and present representatives, employees, affiliates, successors, assigns, and each of them (the "Farris Released Parties"), from any and all claims, liabilities, damages, losses, obligations, rights, actions, defenses, debts, demands, costs, contracts, allegations and causes of action, whether known or unknown, past or present, existing or potential, suspected or unsuspected, latent or patent, direct or indirect, at law or in equity, which any of them had or now has against the Farris Released Parties based upon, arising from or related to the fact that Farris was, is or shall have been a director, officer or employee of the Company; provided, however this Agreement is not intended to, and does not, release, acquit or discharge (i) those obligations of Farris arising under this Agreement, (ii) any claims, liabilities, damages, losses, obligations, rights, actions, defenses, debts, demands, costs, contracts, allegations and causes of action based upon, arising from or related to the fact that Farris was, is or shall have been a director, officer or employee of the Company and is based on: (1) a breach of his duty of loyalty to the Company, (2) any act or omission not in good faith constituting a breach of duty as a director to the Company, (3) any act or omission involving intentional misconduct or (4) any act or omission that involves a knowing violation of the law, or (iii) *any obligations under other*

broadly as the Defendant contends, then the Defendant has "received yet another benefit from the CRA: a release of claims." *See*

*Plaintiffs' Opposition* § II(C)(1) at p. 35, n. 117.

agreements entered into simultaneously with this Agreement.

*See* CRA § 11.

Specifically, the Defendant argues that the Debtor released the claims asserted in Counts 2 through 4 when it signed the CRA. The Defendant further argues that the CRA itself is not a transfer, since the Defendant did not receive anything of value under the CRA. Instead, the Defendant argues that as a result of the CRA, the Defendant gave up his status as a secured creditor and 5.6 million shares of the Debtor's stock in exchange for the Unsecured Replacement Note and the release of certain claims. In short, the Defendant argues that the release of claims provided by § 11(a) of the CRA is not a transfer of property under applicable preference and fraudulent transfer law, and that the return of stock to the Debtor and the substitution of an unsecured claim for a secured claim benefitted the Debtor and did not diminish the Debtor's estate to the detriment of the Debtor's other creditors.

 For the reasons set forth below, the Court is not persuaded by these arguments and concludes that the release of claims provided by § 11(a) of the CRA is itself a transfer of property of the estate that is subject to being avoided under applicable law. The Court's analysis under federal law begins with the broad definition of "transfer" in § 101(54) of the Bankruptcy Code. Under this provision, a transfer is defined as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption." 11 U.S.C. § 101(54). The legislative history reveals that the definition of a transfer is drafted to be "as broad as possible." S. Rep. No. 95–989, at 27 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5812–13.

In considering whether a release of claims is a transfer under § 101(54), two questions need to be addressed: (1) is a claim or cause of action "property" or an "interest in property;" and (2) is a release of such a claim or cause of action a method of "disposing of or parting with property?" Courts have repeatedly answered the first question in the affirmative; a cause of action is property of the estate. *See, e.g., Wischan v. Adler (In re Wischan)*, 77 F.3d 875, 877 (5th Cir.1996) (stating that pre-petition causes of action are property of the estate); *Am. Nat'l Bank of Austin v. Mortgage Am. (In re Mortgage Am. Corp.)*, 714 F.2d 1266, 1277 (5th Cir.1983) (stating that a state cause of action is property of the estate "within the meaning of section 541(a)(1) of the Code"); *United States v. Miller,* Civil Action No. 02–CV–0168–C, 2003 WL 23109906, at *9, 2003 U.S. Dist. LEXIS 24884, at *34 (N.D.Tex. Dec. 22, 2003) (reviewing a Fifth Circuit opinion that "determined that state court causes of action that the debtor could have asserted at the time it filed for bankruptcy were within the description of 'property of the estate'" as defined under 11 U.S.C. § 541(a)(1)). These courts have relied on § 541 of the Bankruptcy Code to reach this conclusion, since the legislative history of § 541 states that causes of action are included as property of the estate.[7] *See, e.g., United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n. 9, 103 S.Ct. 2309, 76 L.Ed.2d 515 (citing legislative history for the proposition that § 541(a)(1) includes causes of action).

7. Section 541 broadly defines property of the estate to include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

Any argument that the causes of action released by § 11(a) of the CRA cannot be considered property of the estate because these causes of action were not held by the Debtor at the commencement of its bankruptcy proceeding is easily rebuffed, as the purpose of preference and fraudulent transfer law is to return property to the Debtor that the Debtor should have held at the commencement of its bankruptcy proceeding. *See Pate v. Hunt (In re Hunt)*, 149 B.R. 96, 103 (Bankr.N.D.Tex. 1992) (stating that "[p]roperty of the estate includes, in addition to claims assertable by the prepetition debtor, 'any interest in property that the trustee recovers under [11 U.S.C. § 550]'") (citing 11 U.S.C. § 541(a)(3)).

Since causes of action are property of the estate, the second question is whether a release is a method of "disposing of or parting with" a cause of action. The Defendant argues that since he did not receive an assignment of rights to a cause of action through the release, the release itself did not transfer any rights in a cause of action. However, the salient question is not whether the Defendant received the cause of action via the release, but whether the Debtor lost the right to assert the cause of action. If the release is valid, of course the Debtor lost the right to assert the cause of action. But, the validity of the release is in question here, as the Trustee attacks the release itself as a fraudulent transfer.

Common sense suggests that a release of claims is a "transfer" of property—*i.e.*, a method of "disposing of or parting with" property, as the releasing party gives up the right to assert the claims in the future. Moreover, concluding that a release of claims qualifies as a "transfer" of property is consistent with the legislative history's guidance that "transfer" should be broadly construed. While little case law directly addresses whether a release is a "transfer" under the Bankruptcy Code, the Fifth Circuit has held that a state court dismissal of a cause of action was a transfer under § 548. In *Besing v. Hawthorne*, the Fifth Circuit stated that:

> [i]n light of the Bankruptcy Code's expansive definition of "transfer," which literally encompasses "every" mode of parting with an interest in property, and the express intent of Congress that this definition be read as broadly as possible, we must agree with the Debtors' contention that the Texas court's dismissal of their claims caused them to "part with" their claims. We hold, therefore, that the bankruptcy court erred in concluding that the state court judgment had not effected a "transfer" of the Debtors' claims against Hawthorne within the meaning of § 548.

*Besing v. Hawthorne (In re Besing)*, 981 F.2d 1488, 1494 (5th Cir.1993). Underlying the Fifth Circuit's decision was the concern that a "final judgment operates to bar the Debtors from reasserting their ... claims in state court." *Id.*

Given the Fifth Circuit's holding in *Besing v. Hawthorne*, this Court concludes that the release, which likewise bars further pursuit of causes of action, constitutes a transfer of the Debtor's claims against Farris within the meaning of the Bankruptcy Code. Other courts have implicitly come to the same conclusion. *See, e.g., Chiasson v. Strachan Shipping Co. (In re Massan Shipping Indus.)*, 272 B.R. 625, 630 (E.D.La.2001) (agreeing with the lower courts ruling that " § 547(c)(1) did not apply, because the release of maritime liens and rights to seize vessels did not constitute 'new value' within the meaning of § 547(c)(1)," and implicitly holding that a release is a transfer subject to a potential "new value" defense); *First Trust Nat'l Ass'n v. Am. Nat'l Bank & Trust Co.*

*(In re Adventist Living Ctrs., Inc.)*, 174 B.R. 505, 517 (Bankr.N.D.Ill.1994) (stating that "the transfer in question, the release of the Landlord's claims in exchange for the accounts receivable, satisfied an antecedent debt of the Debtor").

The question of whether a release is a transfer under Texas state law is easier to answer, as the relevant statute specifically defines "transfer" to include a release. Under the Texas Uniform Fraudulent Transfer Act (codified at TEX. BUS. & COM. CODE §§ 24.001–24.011 (Vernon 2002)), a transfer is defined as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, *release*, lease, and creation of a lien or other encumbrance." TEX. BUS. & COM. CODE § 24.002(12) (emphasis added). In an unpublished opinion[8] directly on point, a Texas appellate court ruled that a question of material fact existed as to whether a company fraudulently transferred assets by executing a release agreement. *Sec. Pac. Equip. Leasing, Inc. v. Thompson*, No. 01–96–01556–CV, 1998 WL 723897, at *2, 1998 Tex.App. LEXIS 6434, at *5–7 (Houston [1st Dist.] Oct. 8, 1998) (no pet. h.). This opinion was based on the fact that a cause of action is an asset under Texas law and that the definition of "transfer" under the Texas Uniform Fraudulent Transfer Act is quite liberal. *Id.*, 1998 WL 723897, at *2, 1998 Tex.App. LEXIS 6434, at at *7. Since the execution of the release agreement resulted in a company not asserting a cause of action against the released parties in a related lawsuit, the state court held that a genuine issue of material fact existed as to whether an asset was fraudulently transferred. *Id.*

Because this Court has concluded that there was a transfer of property when the Debtor's claims were released under the CRA as a matter of law, the Court must now consider the Defendant's other arguments concerning the nonavoidability of the CRA. Besides his argument that the release is not a "transfer" for purposes of preference or fraudulent transfer law, the Defendant argues that the CRA is not avoidable for three additional reasons, and that summary judgment in his favor is therefore appropriate: (1) the CRA is not avoidable under § 547 because the CRA did not enable Farris to receive more than he would under a Chapter 7 liquidation; (2) the CRA is not avoidable in accordance with § 547(c)(1)—*i.e.*, the so-called "contemporaneous exchange" defense; and (3) the CRA is not avoidable under § 548 because the CRA was negotiated at arm's length. The Court will address each of these arguments in turn.

■ The Defendant's first argument is flawed for several reasons. First, it assumes that he received nothing of real value from the CRA transaction. In short, the Defendant repeats his earlier argument that his return of stock to the Debtor and the substitution of an unsecured claim for a secured claim benefitted the Debtor, and did not diminish the Debtor's assets to the detriment of the Debtor's other creditors. And, according to the Defendant, because he was an unsecured creditor instead of a secured creditor after the CRA transaction closed, the transfers evidenced by the CRA transaction could not have enabled him to receive more than he would have received in a Chapter 7 liquidation, as he would have been entitled to all of the proceeds from his collateral before the CRA transaction, and would only share pro rata with other unsecured creditors after the transaction.

8. This Court finds the unpublished opinion persuasive, though not dispositive.

While true in part, this argument ignores the fact that the Defendant's status as a secured creditor is itself subject to attack. The Trustee asserts that all of the Defendant's claims should be recharacterized as equity contributions. If the Trustee is successful in his attack on the Defendant's original secured claim, and that claim is properly recharacterized as equity, the conversion of equity to an unsecured claim pursuant to the CRA transaction would enable the Defendant to receive more than he would have received in a Chapter 7 liquidation.

Based upon the summary judgment record, the Defendant has failed to carry his burden of proof—*i.e.*, the Defendant failed to establish that there is an absence of evidence to support this element of the Trustee's preference claim. Consequently, summary judgment in the Defendant's favor is not appropriate.

■ The Defendant's second argument is that even if the release (and other transactions evidenced by the CRA) is a transfer that may have enabled him to receive more that he would have received in a Chapter 7 liquidation, he has a defense to the Trustee's preference claim in accordance with § 547(c)(1). Under § 547(g), the Defendant bears the burden of proving the nonavoidability of the transfer. *See Krafsur v. Scurlock Permian Corp. (In re El Paso Refinery L.P.)*, 171 F.3d 249, 253 (5th Cir.1999). While the Defendant has alleged that he assigned and conveyed 5.64 million shares of his stock to the Debtor, the Defendant has not provided any evidence in the record as to what those shares were worth.[9] Moreover, as noted

previously, the value of exchanging a secured claim for an unsecured claim was not established by the summary judgment record, particularly where the validity of the secured claim is itself in dispute. Since the Defendant has not come forward with sufficient evidence in the summary judgment record to establish the required elements of his substantially contemporaneous exchange defense, summary judgment in the Defendant's favor is not appropriate.

■ Finally, the Defendant argues that the CRA is not avoidable under § 548 because the CRA transaction was entered into at arm's length. Even if true, how arm's length negotiations leading up to the execution of the CRA is relevant to this avoidance action is not explained by the Defendant. The Court sees little, if any, relevance at this time. Rather, what is relevant to a fraudulent transfer claim is the Debtor's intent in entering into the transaction (did the Debtor make the transfer with actual intent to hinder, delay, and defraud other creditors?), and/or how much value the Debtor received in exchange for the property transferred (did the Debtor receive reasonably equivalent value in exchange for the property transferred?). Because the existence of arm's length negotiations is not dispositive, summary judgment in the Defendant's favor based upon this argument is not appropriate.

### Count 1: The Validity of the Proof of Claim

■ In Count 1, the Trustee asserts that the Court should disallow the Proof of

---

9. The Defendant did attach a purported resolution of the Debtor's Board of Directors, dated October 10, 2001, which stated that the merger with e-Synergies would provide a cash conversion for all issued and outstanding shares of common stock at $.4443 times the number of shares. However, the copy was unsigned and the Defendant was unable to provide a signed copy of this resolution. Thus, it cannot be considered as evidence of the value of the stock.

Claim in whole or in part because the transactions upon which the claim is based are either void or avoidable. The Trustee also asserts that he is entitled to recover damages from Farris (under his Counts 5 through 7 claims) that would offset any amount due to Farris under the Proof of Claim.

In the Motion, the Defendant essentially asserts that he is entitled to summary judgment on the Trustee's claim objection because the releases contained in the CRA insulate the Proof of Claim from attack.[10] Thus, for purposes of the Motion, the validity of the Proof of Claim is contingent on the nonavoidability of the CRA and the Underlying Transactions. Because the Court has concluded that the release of claims contained in the CRA is a transfer of property as a matter of law, and has concluded further that there are genuine issues of material fact with respect to the avoidability of the CRA and the Underlying Transactions, summary judgment on Count 1 in the Defendant's favor is not appropriate.

### Counts 5–7: Claims Arising from Allegations of Fiduciary Breaches

The last three counts all contain allegations that Farris committed fiduciary breaches while acting in his capacity as officer, director, and largest shareholder of the Debtor, and as an individual in whom the Debtor had placed a special trust. In Count 5, the Trustee asserts that Farris breached his fiduciary duties to the Debtor by committing certain wrongful acts and omissions, which can be characterized as falling into one of three categories: (1) misconduct concerning the Underlying Transactions and the CRA transaction; (2) misconduct concerning certain entrench-

ment activities (including Farris's (i) role in the termination of the Debtor's counsel, (ii) decisions concerning expense reductions, (iii) decisions regarding certain sales tax and payroll tax issues, and (iv) failure to disclose certain material transactions to the Debtor); and (3) misconduct concerning the continued accrual of fees under the Consulting Agreement (collectively, the "Wrongful Acts and Omissions"). In Count 6, the Trustee asserts that the Wrongful Acts and Omissions warrant the equitable subordination of the Proof of Claim under § 510(c) of the Bankruptcy Code because the Wrongful Acts and Omissions caused injury to the Debtor while conferring an unfair advantage on the Defendant. In Count 7, the Trustee asserts that the Wrongful Acts and Omissions unfairly advantaged and enriched the Defendant.

The Defendant argues that he is entitled to summary judgment on these counts for three reasons: (1) his liability for many of the alleged acts was released by the CRA; (2) any remaining allegations of wrongdoing are subject to a ratification defense; and/or (3) any remaining allegations of wrongdoing are subject to a business judgment rule defense. The Court will examine each of the Defendant's arguments in turn.

■ The Defendant's first argument that liability for many of the alleged acts was released by the CRA fails because a genuine issue of material fact exists as to whether the CRA transaction is avoidable. Since the avoidability of the releases contained in the CRA must be disposed of after trial, the Defendant cannot rely on the CRA's releases to obtain a summary judgment in his favor on the claims in Counts 5 through 7.

10. Specifically, the Defendant argues that the Unsecured Replacement Note is valid because the CRA insulates the Underlying Transactions from attack. It follows from this argument that the Proof of Claim, which largely consists of a claim under the Unsecured Replacement Note, is also insulated from attack by the releases contained in the CRA.

■ The Defendant's argument that the remaining allegedly wrongful acts were ratified by the Debtor's Board of Directors is equally unavailing. There is no evidence in the summary judgment record to substantiate this defense. While the Defendant did attach affidavits and board resolutions which address the ratification argument to his *Reply in Support of Summary Judgment,* that evidence constitutes new evidence beyond the scope of the summary judgment record. *See Springs Indus. v. Am. Motorists Ins. Co.,* 137 F.R.D. 238, 240 (N.D.Tex.1991) (stating that a reply should "contain argument, not new supporting materials").[11] Furthermore, only one of the two board resolutions provided by the Defendant with his *Reply* is signed. The Court has been unable to find, and Defendant's counsel has not pointed out, any other evidence in the summary judgment record to substantiate the Defendant's ratification argument. Without such evidence, a summary judgment in the Defendant's favor is not appropriate.

■ The Defendant's third argument that many of the alleged Wrongful Acts and Omissions are subject to the business judgment rule defense also fails on summary judgment. The problem with this argument is that it misunderstands the Trustee's claims—the Trustee is not asserting that Farris was negligent, but rather that Farris breached his duty of loyalty to the Debtor.[12] The business judgment rule does not apply to a breach of the duty of loyalty. *See Gearhart Indus. v. Smith Int'l, Inc.,* 741 F.2d 707, 724 n. 9 (5th Cir.1984) (stating that while good faith is applicable to both the duties of care and loyalty, the "business judgment rule is a defense to the duty of care"); *Roth v. Mims,* 298 B.R. 272, 282 (N.D.Tex. 2003) (stating that the Texas business judgment rule "provides that the *negligence* of directors, no matter how unwise or imprudent, does not constitute a breach of duty if the acts were 'within the exercise of their discretion and judgment'") (emphasis added). Since the Trustee is asserting fiduciary breaches of the duty of loyalty, the business judgment rule provides no defense.

Furthermore, the Court cannot grant summary judgment on Counts 5 through 7 because there is a genuine issue of material fact in the record as to whether Farris purposefully breached his fiduciary duties to the Debtor. Several affidavits in the record assert that, around March 2001, Farris said that he would bankrupt the Debtor before giving up control of the Debtor. *See* Affidavit of J. Wade Browne ¶ 3; Affidavit of Ian Bonner ¶ 4; Affidavit of Bennie Bray ¶ 10. Viewed in the light most favorable to the nonmovant, this statement alone raises a genuine issue of

11. The rule set forth in *Springs Industries* is not inflexible; the court stated that if a movant needed to present additional evidentiary materials in a reply, the movant should first confer with the nonmovant. *Springs Indus. v. Am. Motorists Ins. Co.,* 137 F.R.D. 238, 240 (N.D.Tex.1991). However, when, as here, "the movant has injected new evidentiary materials in a reply without affording the nonmovant an opportunity for further response, the court still retains the discretion to decline to consider them." *Id.* Since the new evidentiary materials were only provided to the Trustee no more than two business days before the summary judgment hearing, and

since the Trustee has filed a motion to strike the reply brief, the Court, in its discretion, will decline to consider the new evidentiary materials.

12. While the Trustee did not specifically plead a breach of the duty of loyalty, the Trustee has clarified that these claims arise from a breach of the duty of loyalty and good faith, rather than from a negligence theory. *See Plaintiffs' Opposition* § III(B) at p. 38. The Court will accordingly limit its analysis to whether the business judgment rule provides a defense to a breach of the duty of loyalty and good faith.

material fact as to whether, between March 2001 and October 2001, Farris used his fiduciary position to injure the Debtor. And, a finder of fact could also reasonably infer from this statement that Farris might have intended to harm the Debtor even before March 2001. In light of the affidavits that allege that Farris threatened to drive the Debtor into bankruptcy, the fact that Farris was in a position to make good on his threats, and the fact that almost all of the alleged Wrongful Acts or Omissions occurred between December 2000 and October 2001, the Court finds that a genuine issue of material fact exists as to whether Farris breached his fiduciary duties to the Debtor.

For these reasons, the Defendant is not entitled to summary judgment on the claims asserted against him in the Complaint.[13]

---

**13.** In the Motion, the Defendant also argues that he is entitled to indemnification for all costs incurred in defending this action. Since this Court has ruled that the Defendant is not entitled to summary judgment, the issue of whether the Defendant is entitled to indemnification for his costs is not yet ripe.