**In re NUMED HOME HEALTH CARE, INC., Debtor.**

**NuMed Home Health Care, Inc., Plaintiff,**

v.

**Jugal K. Taneja, Defendant.**

**Bankruptcy No. 00–16984–8G1.**
**Adversary No. 8:02–ap–907–PMG.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

July 12, 2005.

Ryan S. Marsteller, Jennis & Bowen, P.L., Esquire, Tampa, Florida, for the Plaintiff.

Constantine W. Papas, Esquire, Tampa, Florida, for the Defendant.

## ORDER ON (1) PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT AND (2) DEFENDANT'S MOTION FOR SUMMARY JUDGMENT DISMISSING COUNTS IV THROUGH IX OF THE COMPLAINT

PAUL M. GLENN, Chief Judge.

**THIS CASE** came before the Court for hearing to consider the Motion for Leave to Amend Complaint filed by the Plaintiff, NuMed Home Health Care, Inc., and also to consider the Motion for Summary Judgment Dismissing Counts IV through IX of the Complaint filed by the Defendant, Jugal K. Taneja.

The Plaintiff commenced this adversary proceeding by filing a nine-count Complaint against the Defendant. Counts I, II, and III of the Complaint have been dismissed. The remaining six counts consist of state law causes of action (1) to avoid certain prepetition transfers made by the Debtor to the Defendant, and (2) to recover damages for the Defendant's alleged breach of fiduciary duty and breach of an employment contract.

The Defendant contends that there are no genuine issues of material fact, and that he is entitled to the entry of a judgment as a matter of law in this proceeding, because all of the existing claims set forth in the Complaint are barred by a written Release given by the Debtor to the Defendant in 1998.

In its Motion for Leave to Amend Complaint, the Plaintiff requests permission to add a cause of action to the Complaint. The additional count proposed by the Plaintiff consists of an action to avoid the Release as a fraudulent transfer under § 544(b) of the Bankruptcy Code and Florida law.

### Background

On September 1, 1995, NuMed Home Health Care, Inc. (the Debtor or Plaintiff), entered into an Employment Agreement with the Defendant pursuant to which the Debtor employed the Defendant as its Chief Executive Officer for an initial term of three years. (Doc. 1, Complaint, Exhibit A).

On November 23, 1998, the Debtor and the Defendant entered a "Termination, Noncompetition and Mutual Release Agreement" (the "Termination Agreement"). (Doc. 64, Exhibit A). In the Termination Agreement, the Debtor and the Defendant agreed to terminate the Employment Agreement and their employment relationship, and to mutually release each other from any and all claims that they might have against each other under the Employment Agreement. Paragraph 2.A of the Termination Agreement provides in part:

2. *Consideration.*

A. In consideration for the Former Executive's release of his rights under the Terminated Agreement, his noncompetition and non-disclosure covenants, the mutual release, and the tendering of Former Executive's resignation from any and all positions as an officer (but not as a director) of the Former Employer ... the Former Employer shall (i) pay the Former Executive (a) the sum of Two Hundred Fifty Thousand Dollars ($250,000) in cash (the "Cash Payment") ..., and (b) 744,680 shares of the Former Employer's common stock (the "Common Stock")(which number of shares represents $350,000 worth of the Common Stock based on the average closing price for the last five (5) trading days) ..., and (ii) extend the term of all of Former Executive's existing options and warrants for a term of three years from the date hereof.

(Doc. 64, Exhibit A, pp. 1–2). Paragraph 4.B of the Termination Agreement provides in part:

4. *General Mutual Release.*

.    .    .    .    .

B. Former Employer, on its own behalf and on behalf of its successors and assigns, hereby releases and forever discharges Former Executive, along with his heirs, successors, and representatives from all manner of civil actions, contract actions, tort actions, statutory actions, administrative actions, injuries, damages, loss of services, constitutional claims, charges of discrimination and claims for costs, expenses or attorney's fees which it had, has, or hereafter can, or may have against the Former Executive arising out of any event, act or occurrence in any way based on (i) the employment of the Former Executive by the Former Employer or (ii) actions or inaction of Former Executive as a director prior to and including the date hereof, including but not limited to any and all claims, damages or losses, known or unknown, directly or indirectly sustained by the Former Employer in connection with any matter arising out of their employment relationship or service by Former Executive on the Former Employer's board of directors, except for the provisions of this Agreement.

(Doc. 64, Exhibit A, p. 5). The Termination Agreement was signed by the Defendant and by Susan Carmichael on behalf of the Debtor.

On November 23, 1998, the Defendant received a share certificate for 744,680 shares of common stock of the Debtor. (Doc. 25, Affidavit of Jugal K. Taneja, p. 2).

Between December 10, 1998, and January 27, 1999, the Defendant received five checks totaling $250,000.00 from the Debtor. (Doc. 25, Affidavit of Jugal K. Taneja, p. 2).

The share certificate was issued, and the payments were made to the Defendant, pursuant to Paragraph 2.A of the Termination Agreement.

The Debtor filed its petition under Chapter 11 of the Bankruptcy Code on November 1, 2000.

On October 31, 2002, the Plaintiff/Debtor filed its Complaint against the Defendant. Counts I, II, and III of the Complaint have been dismissed with prejudice. (Doc. 37). In Count IV of the Complaint, the Plaintiff alleges as follows:

47. Within four years of the Petition Date in this case, the Debtor made certain transfers to Taneja, including, but not limited to: (1) salary payments while Taneja was not devoting his time, attention, and energies towards the performance of the business of the Debtor; (2)

$250,000 in cash and 744,680 shares of common stock of the Debtor valued at $350,000 in exchange for releasing the Debtor from its contractual obligations under the employment agreement as contained in the severance package in Taneja's Departure Agreement; and (3) any and all transfers made by the Debtor to Taneja within four years of the Petition Date (collectively, the "Four Year Transfers").

(Doc. 1, Complaint, p. 8). Count IV and Count V of the Complaint consist of actions to avoid the Four Year Transfers pursuant to § 544 of the Bankruptcy Code and § 726.105 of the Florida Statutes. Count VII and Count IX of the Complaint consist of actions for damages pursuant to § 607 of the Florida Statutes, based on the payments and transfers made to the Defendant pursuant to the Termination Agreement. Count VI and Count VIII consist of actions for damages based on the Defendant's alleged breach of fiduciary duty and breach of employment contract, respectively.

On March 15, 2005, the Defendant filed a Motion for Summary Judgment Dismissing Counts IV through IX of the Complaint. (Doc. 63). In the Memorandum that accompanied his Motion, the Defendant alleges that the remaining Counts in the Complaint "are all barred by virtue of the Release given to Taneja by NuMed and contained in the November, 1998 Termination Agreement.... The language of the Release, the clear intent of the parties to the Termination Agreement and the affidavit of NuMed's President provide an unimpeachable basis for concluding that the parties intended to release each other from all further litigation." Consequently, the Defendant asserts that there are no genuine issues of material fact, and that all remaining Counts of the Complaint should be dismissed with prejudice. (Doc. 64, pp. 2, 3, 5).

On May 13, 2005, the Plaintiff filed a Motion for Leave to Amend Complaint pursuant to Rule 7015 of the Federal Rules of Bankruptcy Procedure and Rule 15(a) of the Federal Rules of Civil Procedure. (Doc. 80). The proposed Amendment attached to the Motion includes the following allegations:

2. Paragraph 4(B) [of the Termination Agreement] purportedly attempts to release causes of action the Debtor may have against the Defendant related to his employment relationship with the Debtor and the Defendant's services on the Debtor's board of directors.

.    .    .    .    .

5. The Debtor did not receive "reasonably equivalent value" in exchange for the release of causes of action against the Defendant as set forth in Paragraph 4(B) of the Departure Agreement.

.    .    .    .    .

8. The Departure Agreement (or at least that portion of the Departure Agreement that purports to release causes of action against the Defendant) is avoidable under §§ 726.105 and 726.106 and 11 U.S.C. § 544(b).

(Doc. 80, Exhibit A). Consequently, if the proposed Amendment were allowed, the Plaintiff would seek the avoidance of the Termination Agreement to the extent that it contains a release by the Debtor of claims or causes of action against the Defendant.

## Discussion

The two matters under consideration are (1) the Defendant's Motion for Summary Judgment, and (2) the Plaintiff's Motion for Leave to Amend Complaint.

The Defendant's Motion for Summary Judgment is based primarily on the con-

tention that all of the Plaintiff's causes of action are barred by the terms of the Release. If the Plaintiff's Motion is granted, however, its Amended Complaint would introduce the avoidance of the Release as a critical issue in this proceeding. Consequently, the allowance of the Amendment to the Complaint would have a significant and direct impact on the Defendant's request for dismissal of the Plaintiff's claims.

The logical order in which to consider the two motions, therefore, is to first determine whether the Plaintiff should be permitted to amend its Complaint to add a Count seeking the avoidance of the Release. After that determination has been made, the Court will then consider whether the pleadings and record warrant the entry of a summary judgment in favor of the Defendant.

## A. Leave to Amend

Rule 15 of the Federal Rules of Civil Procedure, as made applicable to this proceeding by Rule 7015 of the Federal Rules of Bankruptcy Procedure, provides in part:

**Rule 15. Amended and Supplemental Pleadings**

■ (a) Amendments. A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. *Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.*

(Fed.R.Civ.P.15(a))(Emphasis supplied). "Under Rule 15(a), leave to amend shall be 'freely given when justice so requires.'"

Fed.R.Civ.P. 15(a). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the party of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *McKinley v. Kaplan,* 177 F.3d 1253, 1258 (11th Cir.1999)(quoting *Foman v. Davis,* 371 U.S. 178, 181–82, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). See also *In re Terry Manufacturing Company, Inc.,* 322 B.R. 696, 698 (Bankr.M.D.Ala.2005).

■ "Moreover, it has been said that the purpose of Rule 15(a) is to 'assist the disposition of litigation on the merits of the case rather than have pleadings become ends in themselves.'" *In re RDM Sports Group, Inc.,* 253 B.R. 298, 301 (Bankr. N.D.Ga.2000).

In this case, there is no indication in the record that the Plaintiff's request to amend its Complaint is the product of bad faith or any improper motive. Further, there is no history in this case of the Plaintiff's failure to comply with prior orders or of its disregard of the Court's procedures.

Instead, the Defendant contends that the Plaintiff's Motion should be denied because the proposed Amendment is futile. (Doc. 83). Specifically, the Defendant asserts that the Plaintiff "cannot satisfy any of the basic elements necessary to bring a claim under § 726.106(1)." (Doc. 83, p. 2).

■ "'Futility' of amendment is shown when the claim or defense is not accompanied by a showing of plausibility sufficient to present a triable issue. Thus a trial court may appropriately deny a motion to amend where the amendment would not withstand a motion to dismiss.

(Citations omitted). The newly asserted claim must thus appear sufficiently grounded in law or fact as not to be deemed a frivolous pursuit." *In re Quality Botanical Ingredients, Inc.*, 249 B.R. 619, 629–30 (Bankr.D.N.J.2000). "The Court should deny an amendment as futile only when the proposed amendment is clearly insufficient or frivolous on its face." *United States v. Hollar*, 885 F.Supp. 822, 826 (M.D.N.C.1995).

■ The Plaintiff's proposed Amendment in this case is not futile. The proposed Amendment is brought pursuant to § 544(b) of the Bankruptcy Code and §§ 726.105 and 726.106 of the Florida Statutes, and must be read in conjunction with the General Allegations and other Counts set forth in the original Complaint. Count IV and Count V of the original Complaint also consist of avoidance actions under § 544 of the Bankruptcy Code and Florida's fraudulent transfer statutes.

In the proposed Amendment, the Plaintiff alleges that "the Debtor did not receive 'reasonably equivalent value' in exchange for the release of causes of action against the Defendant," and that the Debtor was insolvent, or would become insolvent, at the time that the Release was executed. Additionally, the Plaintiff alleges that "[t]here is at least one holder of an allowed unsecured claim pursuant to 11 U.S.C. § 502 who would have standing to assert a claim for relief under the Florida Uniform Fraudulent Transfer Act." (Doc. 80, Exhibit A).

It does not appear "beyond a doubt that the [Plaintiff] can prove no set of facts in support of his claim which would entitle him to relief." *United States v. Baxter International, Inc.*, 345 F.3d 866, 880 (11th Cir.2003). Consequently, the Court cannot conclude that the proposed Amendment would not withstand a Motion to Dismiss under Rule 12(b)(6) of the Federal Rules

of Civil Procedure. *In re Quality Botanical Ingredients, Inc.*, 249 B.R. at 630.

The Amendment is not "futile" within the meaning of Rule 15(a) of the Federal Rules of Civil Procedure, and should not be disallowed on that basis.

■ Additionally, the Motion for Leave to Amend should not be denied based on the Plaintiff's delay in making the request.

In the proposed Amendment, the Plaintiff seeks to avoid the Release contained in the Termination Agreement. The Defendant relies on the terms of the Release in its request for the entry of a summary judgment dismissing the Complaint.

It is significant, however, that the Defendant did not raise the enforceability of the Release as an Affirmative Defense in his original Answer filed early in the proceedings. (Doc. 10). In fact, the Defendant did not add the Release as an Affirmative Defense until he filed an Amended Answer on January 28, 2005, more than two years after the proceeding was commenced. (Doc. 50). It is also noteworthy that the Amended Answer was filed by the Defendant pursuant to the written consent of the Plaintiff. (Doc. 51).

The Motion to Amend Complaint was filed approximately three and one-half months after the Defendant amended his Answer to include the Release as an Affirmative Defense, and approximately two months after the Defendant filed his Motion for Summary Judgment based on the added Affirmative Defense. Given the nature of the issues involved in this case, the Court finds that the Plaintiff filed the Motion within a reasonable time after learning of the defense.

Finally, the cause of action proposed in the Amended Complaint is intertwined with the claims set forth in the original Complaint. A copy of the Termination

Agreement is attached to the original Complaint, for example, and the relief requested in seven out of nine Counts of the original Complaint involved payments made to the Defendant pursuant to the Termination Agreement. The Release that the Plaintiff seeks to avoid in the Amended Complaint is also contained in the Termination Agreement, and the challenged payments to the Defendant were made, at least in part, in consideration of the "mutual releases." (Doc. 64, Exhibit A,).

The cause of action asserted in the proposed Amended Complaint arose out of the same transaction as the claims set forth in the original Complaint. Fed.R.Civ.P. 15(c)(2). The addition of the claim should not impose any hardship or undue prejudice on the Defendant.

The Motion for Leave to Amend Complaint should be granted, and the Plaintiff should be permitted to file the Amendment to Complaint in the form attached to the Motion.

### B. Motion for Summary Judgment

■ The Court has determined that the Plaintiff should be permitted to amend its Complaint to add a cause of action to avoid the Release contained in the Termination Agreement. The next issue, therefore, is whether the Defendant is entitled to the entry of a summary judgment in his favor, on the basis that the fraudulent transfer claims and tort claims originally asserted by the Plaintiff are barred by the terms of the Release.

The Defendant's Motion for Summary Judgment should be denied.

*In re e2 Communications, Inc.,* 320 B.R. 849 (Bankr.N.D.Tex.2004) involved an action by a Creditors' Trust against the debtor's former president to recover certain fraudulent transfers, and also to recover damages for the president's breaches of fiduciary duty. *In re e2 Communications,* 320 B.R. at 853. In response, the former president alleged, among other defenses, that the debtor had released the fraudulent transfer and underlying claims against him pursuant to a Contribution and Release Agreement. *Id.* at 853. The former president then filed a Motion for Summary Judgment and asserted that the Trust's claims were not supported by any evidence. *Id.* at 851.

The Court first determined that the release contained in the Contribution and Release Agreement was "itself a transfer of property of the estate that is subject to being avoided under applicable law." *Id.* at 855. The "release, which likewise bars further pursuit of causes of action, constitutes a transfer of the Debtor's claims against Farris within the meaning of the Bankruptcy Code." *Id.* at 856.

Consequently, the Court then evaluated the former president's contention that a judgment should be entered in his favor based on the release set forth in the Contribution and Release Agreement.

The Defendant's first argument that liability for many of the alleged acts was released by the CRA fails because a genuine issue of material fact exists as to whether the CRA transaction is avoidable. Since the avoidability of the releases contained in the CRA must be disposed of after trial, the Defendant cannot rely on the CRA's releases to obtain a summary judgment in his favor on the claims in Counts 5 through 7. *Id.* at 859. The former president's motion for summary judgment was denied based on the existence of genuine issues of material fact. *Id.* at 861.

In this case, the Court makes no determination as to the ultimate avoidability of the Release contained in the Termination Agreement between the Debtor and the

Defendant. The Court has allowed the Plaintiff to amend its Complaint, however, to add a cause of action seeking the avoidance of the Release as a fraudulent transfer. If the "transfer" is avoided, of course, the result would negate the Defendant's affirmative defense that he was released from liability for the remaining state law claims brought pursuant to the Employment Agreement and the Termination Agreement. As in *e2 Communications,* therefore, the presence of the issue precludes the entry of a summary judgment in the Defendant's favor.

### Conclusion

In this adversary proceeding, the Plaintiff seeks to avoid certain prepetition transfers made by the Debtor to the Defendant, and to recover damages for the Defendant's alleged breach of fiduciary duty and breach of an employment contract. In response, the Defendant contends that the Debtor had released him from liability for all of the claims set forth in the Complaint by virtue of a written Release executed in 1998.

The Plaintiff now seeks permission to amend its Complaint to add a cause of action to avoid the Release as a fraudulent transfer under § 544(b) of the Bankruptcy Code and Florida law. The Court finds that the proposed amendment is not futile or untimely, and that the Plaintiff should be permitted to amend its Complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure.

The proposed Amendment directly affects the Defendant's contention that the Plaintiff is barred from asserting its state law claims against him. Consequently, there are genuine issues of material fact regarding the availability of the defense of release, and the Defendant's Motion for Summary Judgment should be denied.

Accordingly:

**IT IS ORDERED** that:

1. The Motion for Leave to Amend Complaint filed by the Plaintiff, NuMed Home Health Care, Inc., is granted, and the Plaintiff is permitted to file the Amendment to Complaint in the form attached to the Motion.

2. The Motion for Summary Judgment Dismissing Counts IV through IX of the Complaint filed by the Defendant, Jugal K. Taneja, is denied.